OF MARYLAND. 311

Howard vs. Wilmington and Sus. Rail Road Co.—1843.

## S. AND H. HOWARD vs. THE WILMINGTON AND SUSQUE-HANNA RAIL ROAD COMPANY.—*December* 1843.

Where the parties entered into a contract, to construct a road between two
given points, which from its nature was an entire indivisible contract, and
afterwards entered into another agreement for the performance of the same
work, either in part, or in the whole, at a different price, the latter is an
extinguishment of the first contract.

Where an entire contract is extinguished in part or in the whole, an action
on the contract itself cannot be sustained.

Where an entire contract is extinguished in part or in whole, by the making
a new one for a part of the subject matter of the first, it is not sufficient
for the plaintiff, who seeks to recover damages for a violation of the origi-
nal agreement, and to repel the legal presumption of a merger in such a
case, to aver that *he* entered into the *second* contract with an express un-
derstanding on *his* part, and so declared to the defendants at the time, that
the *first* contract was not waived, except so far as it was covered by the
second; but the fact of assent by the other party should have been also
averred.

The legal presumption of a merger, as where two contracts are succes-
sively entered into upon the same subject matter, is not to be repelled
by evidence of the silence of one party, but assent of parties must be aver-
red and proved, to prevent such presumption from operating.

Whether parol evidence of such assent would be received to vary the effect
of the second contract upon the first, both being in writing. QUERE?

Where a contract has been vacated and rendered legally inoperative in part
by the consent of the plaintiff, no action can be sustained upon it for the
recovery of damages on the ground, that the plaintiffs was prevented by
the wrongful act of the defendant from fulfiling it.

Where an original contract has been rescinded by the parties after it has been
performed in part, either by a waiver of the performance of the balance of
the contract, or entering into a new one so inconsistent with the first as to
be wholly irreconciliable with it, in such case a recovery may be had for
the performance on a general count; but not by declaring on the contract
itself.

It is a rule in pleading, that each party tacitly admits all such traversable al-
legations on the opposite side, as he does not traverse.

In July 1836, the plaintiff contracted with the defendant, to construct a rail
road according to certain specifications, to complete one mile by the 15th
October, and the residue by the 1st of November following. The defen-
dant agreed to pay in monthly payments, according to the measurement
and valuation of his engineer, retaining from each payment fifteen per
cent., until the final completion of the work, and was authorised in certain
cases to declare the contract forfeited, from which the plaintiff should have
no appeal. The plaintiff averred, that he diligently prosecuted his work,

&c., until the 17th September, when he was prevented by a writ of injunction, served on him until the 30th October, from going on; that the engineer of the defendant had not complied with his duty, stating the particulars of his breach thereof under the contract; that he proceeded after the 1st November, under the orders of the defendant to prosecute the work until the 19th January, and that the work done under the agreement in December 1836, was estimated by defendant's engineers, at, &c., which sum not being paid, the defendant on the 19th January, fraudulently, and for the illegal purpose of imposing better terms on the plaintiff, &c., declared the contract forfeited. The defendant pleaded, that the contingencies (stating them,) on which the right to forfeit the contract depended, had occurred, and that on the 19th January, he had in virtue of his reserved power, forfeited the agreement. To this the plaintiff demurred generally. Held:

1. That the breaches of contract, not denied by the plea, were admitted.
2. That the illegal and fraudulent purpose, for which the contract was alleged to have been annulled, was also admitted.
3. That the annulling the contract under the circumstances, was a breach thereof.

Where a contract is broken, the plaintiff will be entitled to some damages, whether they be stated or not.

Damages are implied from a breach of a contract.

Wherever damages necessarily and naturally arise from the breach complained of, and may therefore be implied, they need not be stated; otherwise they must, to prevent surprise.

Where a breach of contract is relied on, from which damages necessarily and naturally arise, the general conclusion, that the plaintiff has sustained damage in, &c., is sufficient to all the counts in the declaration, and obviates the necessity of charging damages generally in each one of them.

APPEAL from *Cecil* County Court.

This was an action of *assumpsit,* commenced on the 21st March 1837, by the appellants against the appellees.

The plaintiff's declaration contained nine counts.

The defendant pleaded nine pleas, viz:

1st and 2nd plea, *non-assumpsit* and payment to all the counts on which issues were joined.

3rd plea was to the 4th count.

4th plea to the 5th count.

5th plea to the 6th count.

6th plea to the 8th count.

7th plea to the 1st count.

8th plea to the 2nd count.

9th plea to the 3rd count.

To these seven last pleas, the plaintiffs demurred generally.

The county court overruled the demurrers, and decided the pleas to be sufficient in bar of the action.

At the trial in this court the parties agreed, that the *general counts* in the plaintiff's declaration should be abandoned and stricken therefrom; that the judgment for the defendants should be regarded and treated as a general judgment, and that the case should be argued and heard upon the demurrers to the pleas filed to the 1st, 2nd, 3rd, 4th, 5th, 6th, 8th and 9th counts of the plaintiff's declaration.

The plaintiffs declared as follows:

1ST COUNT. For that whereas the said plaintiffs heretofore, were employed in executing work and labor upon rail roads and canals as their proper business, &c., and whilst they were so employed, to wit, on the 1st October 1835, at, &c., at the request of the defendants, they the said plaintiffs, did make and enter into a contract or agreement with the said W. and S. R. R. Co., to graduate the W. and S. rail road between *Charlestown and Havre De Grace,* for twenty-four cents per cubic yard for excavation, grubbing and purchasing land for embankment across *Principio Valley* included. The plaintiffs to purchase land to supply material for embankment when it could not be supplied from the road, without making a haul of less than eleven hundred feet; all rock or other material that could not be removed without blasting, to be left to the superintending agent, and if said agent and plaintiffs could not agree as to the price, the agent might re-let this part of the work to any other person, as specified in the former specifications of said company of the first and second divisions. And the said plaintiffs aver, that after the making the contract aforesaid, and in consideration thereof, to wit, on, &c., at, &c., and also in consideration, that the said plaintiffs then and there undertook and faithfully promised the defendants to fulfil, perform and keep the said contracts, all things on said plaintiffs part to be performed, fulfilled and kept. They the said defendants, undertook and faithfully promised the said plaintiffs to perform, ful-

fil and keep the said contract in all things on defendants part, to be performed, fulfilled and kept, to wit, on, &c., at, &c. And the said plaintiffs declare, that they have always since the making of the said contract, been able, ready and willing to perform, fulfil and keep all things in said contract specified on their part to be performed, fulfilled and kept, according to the true intent and meaning of the said contract, of which the said defendants had notice, to wit, on, &c., and often afterwards at, &c. And the said plaintiffs further say, that in consideration of the contract aforesaid, and of the promises and undertakings of the said defendants aforesaid, and for the purpose of performing all things in said contract on the part of said plaintiffs to be performed, they did advertise, proclaim and publicly declare, that they would employ and hire all such laborers as should apply to said plaintiffs to be hired for a reasonable compensation, to work upon the rail road in the contract stated, between *Charlestown* and *Havre De Grace,* in consequence whereof the plaintiffs were applied to by a great number of laborers to be hired, to wit, upon said road, and said plaintiffs did engage, hire, and pay a much larger number of laborers than they at that time had use for, or could work to advantage on the other job of work they were then engaged in completing, for the purpose of retaining said laborers in plaintiffs employment, with their carts, oxen and horses, so that the plaintiffs might be ready and prepared to commence and vigorously prosecute to its completion the graduation of the rail road in the agreement specified, whenever the said defendants were ready, and should give notice to the plaintiffs to begin to work upon it; and the said plaintiffs also aver, that they employed a number of boarding masters, to board the laborers to be employed in working on the said rail road in said agreement specified, many of whom purchased and provided large supplies of food, bedding and cooking utensils; and the plaintiffs engaged the services of a number of managers to superintend the work of the laborers, all of whom were retained by the said plaintiffs at great expense, until said defendants were ready for plaintiffs to begin grading the rail road between *Charlestown* and *Havre*

*De Grace,* according to the agreement aforesaid; and the said plaintiffs also purchased a great number of implements and engines, and one hundred dozen shovels for the purpose of fulfilling their agreement aforesaid, and were put to great expense, inconvenience, trouble and delay in and about satisfying, retaining and compensating the laborers, workmen and others whom they had engaged, retained and hired, for the purpose of fulfilling their agreement as aforesaid. And said plaintiffs further declare, that a great number of laborers, workmen and others they had engaged and hired for the purpose of fulfilling the agreement aforesaid, moved upon the line of the rail road between *Charlestown* and the *Susquehanna River,* and there constructed their houses or shantees, to be ready to commence their labors on said rail road, according to the agreement they had entered into as aforesaid, with the said plaintiffs; and the said plaintiffs moved and transported all their necessary engines, implements, machinery, stores and other effects from the *Baltimore* and *Port Deposit* rail road to *French Town* in *Cecil* county, for the purpose of making ready to use the same on that part of the *Wilmington* and *Susquehanna Rail Road* in said agreement mentioned. And the said plaintiffs say, they were then and there able, ready and willing to commence and prosecute the work in the said agreement mentioned, to its completion, according to said agreement; and said plaintiffs further aver, *that they were hindered and prevented by the making of the agreement aforesaid, from attending to and bidding for the lettings and contracts upon other rail roads and canals in various other places,* which they otherwise might and would have attended to and bid for, and engaged in, and thereby lost the opportunity of making large gains and profits from the same; and the plaintiffs further aver, that although after the time of making the agreement aforesaid, to wit, on the 12th July 1836, *they entered into another contract or agreement in writing* with said defendants, to do all the grading of that part of section No. 9 of the same rail road, mentioned in the first agreement, and which lies in the state and county aforesaid, and which extends from station No. 191 to the end of the piers and wharf

in the river *Susquehanna* opposite *Havre De Grace*, being a portion of the same rail road included in the first agreement above stated.   Nevertheless, the said second agreement to grade section No. 9 from station No. 191 to the river as aforesaid, was made and entered into, with the expressed determination and understanding on the part of the plaintiffs, and was so declared and expressed by the plaintiffs to the said defendants, at and before the time of entering into the said second agreement, that by entering into the said second agreement, they the said plaintiffs, *did not waive, abandon or rescind the said first agreement* so made as aforesaid, but that notwithstanding the said second agreement, the said plaintiffs held and considered the said defendants liable and responsible to them for all the loss, injury and inconvenience the said plaintiffs had suffered or been put to by the non-fulfilment on the part of the said defendants, of all the matters and things in the said first agreement by them to be performed and observed, according to the true intent and meaning of the said first agreement, except only insomuch as said first agreement refers to that part of the said rail road that is mentioned in said agreement, of all which premises the said defendants had notice, to wit, at, &c.   Yet the said plaintiffs say, that the defendants well knowing the premises, but contriving and wrongfully intending, artfully and deceitfully to defraud and injure the said plaintiffs, to wit, on the 1st December 1835, at, &c., wholly refused and declined to observe, perform and fulfil any of the matters and things in the said *first agreement*, specified on their part to be performed and fulfilled, and refused and declined to perform any of the matters and things in their said promise and undertaking, but thereby craftily and subtily deceived the said plaintiffs in this, videlicit, that the said defendants took the work of grading the rail road in the first agreement mentioned out of the hands of the said plaintiffs, by letting the same to other contractors and persons without the consent of and against the will of said plaintiffs; and said defendants further disregarding the said first agreement, and their promises and undertakings afterwards, to wit, on the 1st of December 1835, at the county

aforesaid, did not, nor would permit or suffer the plaintiffs to begin or proceed to complete the work on the rail road in the first mentioned agreement specified, and then and there wholly hindered and prevented them from so doing, and then and there wrongfully and unjustly discharged the plaintiffs from any performance or completion of their first said agreement and promise and undertaking, whereby the plaintiffs have been deprived of all the profits, gains and advantages, which they otherwise might, and would have derived and acquired from the completion of the work in the first agreement mentioned scilicet at, &c.

2ND COUNT. For that whereas the said plaintiffs were heretofore engaged in executing jobs of work and labor upon rail roads and canals as their proper business, &c., and the said W. and S. R. R. Co. were incorporated for the purpose, amongst other things, of constructing a rail road in the county aforesaid, and were bound by their charter to complete the construction of the said rail road in a given time mentioned therein, on pain of forfeiting their franchise, and said company were empowered amongst other things, to enter into contracts with laborers and others, for the purpose of constructing said road, and the said defendants scilicet on the 1st of October 1835, at, &c., in consideration, that the plaintiffs at the special instance and request of the defendants, would undertake, promise and agree to grade all that portion of the W. and S. R. R. that lies betwixt *Charlestown* and *Havre De Grace*, or that was there laid out or contemplated to be made there in *Cecil* county, and would agree to execute the whole in a workmanlike manner, and according to the directions of the engineer, the defendants undertook and promised the plaintiffs, that they would have the privilege of wasting the material of the cut, and of purchasing ground to supply the embankment over *Principio Valley* when it could not be supplied from the road, without making a haul of less than eleven hundred feet; and the defendants undertook, and then and there promised the said plaintiffs to permit and suffer them to grade the portion of the rail road that lies between *Charlestown* and the *Susquehanna* river,

and to pay the said plaintiffs twenty-four cents per cubic yard for common excavation, all rock excavated to be paid for at the estimate of the engineer; and the said plaintiffs aver, that they, confiding in the promise and undertaking of the said defendants, did undertake, promise and agree, to and with said defendants to grade all that portion of the W. and S. R. R. that lies between *Charlestown* and *Havre De Grace* in a workmanlike manner, according to the directions of the engineer, afterwards, to wit, on 1st October 1835, at, &c., on the day and year last aforesaid, and divers days and times thereafter, did provide the necessary laborers, means and instruments for the purpose of grading the road as aforesaid, and were put to great trouble and expense, in and by engaging a great number of superintendants and laborers, and retaining them until the said defendants should be ready for plaintiffs to begin grading said rail road, and by purchasing a great number of shovels and other implements, and by moving and transporting all their necessary implements, machinery and stores from the *Baltimore* and *Port Deposit* rail road to *French Town*, for the purpose of using them in and about grading that portion of said rail road above mentioned; and the said plaintiffs further aver, that they have been able and willing ever since the making of the said promise and undertaking of the defendants aforesaid, (until as hereinafter stated they were prevented from so doing by said defendants,) to begin and execute the grading of that portion of said rail road that lies betwixt *Charlestown* and *Havre De Grace,* in a workmanlike manner, and according to the directions of the engineer, whereof the said defendants then and there had notice at *Cecil* county aforesaid.   Yet the said defendants not regarding their said promise and undertaking in manner aforesaid made, but contriving and fraudulently intending to deceive and injure the said plaintiffs in this behalf, did not, nor would, permit or suffer the said plaintiffs to begin to grade the said portion of rail road, nor to complete the grading of the same, but wholly refused and neglected so to do, and on the contrary thereof, they the said defendants, after the making of their said promise and undertaking, and whilst the

said plaintiffs were able and willing to begin and execute the grading of that portion of the rail road that lies betwixt *Charlestown* and *Havre De Grace* in a workmanlike manner, according to the directions of the engineer, to wit, on 1st of December 1835, at, &c., wrongfully and unjustly, and without the license and consent, and against the will of plaintiffs, they the said defendants, let out the said portion of the rail road, and contracted for its graduation with other persons, and caused it to be graded by them, whereby the said plaintiffs were hindered and prevented from grading or beginning to grade said portion of the rail road aforesaid, nor did the said defendants pay the said plaintiffs twenty-four cents per cubic yard for the common excavation on said portions of rail road nor any part thereof, nor did they pay the said plaintiffs for the rock excavated according to the estimate of the engineer, although often requested so to do, but have hitherto wholly refused and neglected, and still refuse. And the said plaintiffs also aver, that the said defendants wrongfully and unjustly discharged the plaintiffs from the performance or completion of their said promise and undertaking, whereby the said plaintiffs not only lost and were deprived of all the profits, benefits and gains that might and would have accrued to them from grading the said portion of the rail road betwixt *Charlestown* and the *Susquehanna* river, but also suffered and were put to great loss and expense of time and money, in and about preparing to execute the grading of said rail road, and prevented from entering into contracts and engagements for jobs of work on other rail roads and canals, amounting in the whole to a large sum of money, at, &c.

3RD COUNT. And whereas also heretofore, that is to say, on the 1st October 1835, at, &c., in consideration that the said plaintiffs, at the special instance and request of the defendants, would get ready and be prepared in a reasonable time, then next ensuing the day and year last aforesaid, with laborers, implements, machinery, horses and carts, to grade a certain portion of a rail road, which the defendants were then engaged in constructing, the defendants then and there undertook,

and faithfully promised the plaintiffs to suffer and permit them to grade all that portion of the W. and S. R. R.; (or by whatever other name the same may be called,) that they were engaged in constructing, or intended to construct betwixt *Charlestown* and the *Susquehanna* river, and to give the plaintiffs the privilege of wasting all material of the cut not required for the embankments, and permit them to purchase earth to supply the embankments over *Principio Valley,* where it could not be supplied from the road without making a haul of less than eleven hundred feet, and if the plaintiffs would execute the whole grading in a workmanlike manner, and according to the directions of the engineer, undertook and promised to pay them twenty-four cents per cubic yard for common excavation, and to pay the plaintiffs for all rock excavated at the estimate of the engineer. And the said plaintiffs aver, that they, confiding in the said promise and undertaking of the defendants, afterwards, at, &c., on, &c., in the county aforesaid, and on divers days and times thereafter, for the purpose of being ready and prepared with laborers, implements, machinery, horses and carts to grade the portion of the said rail road above mentioned, did engage and hire a great number of laborers, and horses and carts, all of which were kept and retained by plaintiffs in a state of readiness and at great expense, waiting for a long space of time for defendants to permit and suffer the plaintiffs to begin the grading of the portion of the rail road above specified, and said plaintiffs purchased a great number of necessary implements and machines, and one hundred dozen shovels, for the purpose of being ready to grade said rail road, and were put to great expense and trouble in and about moving and transporting their engines, machinery and other effects from the *Baltimore* and *Port Deposit* rail road to *French Town* in *Cecil* county, for the purpose of being ready and prepared to commence grading the said portion of said rail road above mentioned, and to proceed with the completion of the same in a workmanlike manner, according to the directions of the engineer, so soon as the defendant might or should permit, or suffer the plaintiffs to begin to grade the same; and the said

plaintiffs further aver, that they were hindered and prevented by the promise and undertaking of said defendants, made in manner and form as above stated, from undertaking and engaging in jobs of work on other rail roads and canals, and lost thereby the opportunity of making large gains and profits from the same, of all which premises the defendants on the day and year aforesaid, at the county aforesaid, had notice. And the said plaintiffs aver, that from the time of making the said promise and undertaking of the said defendants, the plaintiffs were ready and willing in a reasonable time, and for a long space of time, scilicet, from the time of making said promise and undertaking until the 1st December 1835, at the county aforesaid, and offered to begin to grade all that portion of the rail road above mentioned, and to complete the same in a workmanlike manner, according to the directions of the engineer, in a reasonable time, of all which premises the defendants at, &c., on, &c., and often afterwards, had notice. Yet the said plaintiffs in fact say, that the defendants, contriving and wrongfully intending to injure the said plaintiffs, did not nor would perform their said promise and undertaking in form aforesaid made, but totally disregarding the same, did not nor would permit or suffer the said plaintiffs to begin to grade that portion of the rail road above mentioned, betwixt *Charlestown* and the *Susquehanna* river, but wholly neglected and refused so to do, and on the contrary thereof, they the said defendants, after the making of their said promise and undertaking, and whilst the said plaintiffs were ready and willing to begin and complete the grading of that part of the rail road above specified, in a workmanlike manner, and according to the directions of the engineer, to wit, on the 1st December 1835, at *Cecil* county aforesaid, wrongfully and unjustly, and without the license or consent of the plaintiffs, and against their will, contracted for the grading of the above stated portion of rail road betwixt *Charlestown* and the *Susquehanna* river, with other persons than the plaintiffs, and caused the said portion of rail road to be graded by them, whereby the plaintiffs were hindered and prevented from beginning to grade said portion of rail road, and were

wrongfully and unjustly, and against their will, discharged by the defendants from beginning and completing the grading of the said rail road betwixt *Charlestown* and the *Susquehanna* river, in a workmanlike manner, and according to the directions of the engineer, nor did the said defendants pay the plaintiffs twenty-four cents per cubic yard for the common excavation on said portion of the rail road, nor any part thereof, nor did said defendants pay the plaintiffs for the rock excavated according to the estimate of the engineer, although often requested so to do, to wit, at the county aforesaid; but to pay the same or any part thereof, the said defendants have hitherto wholly refused, and still do refuse, whereby the said plaintiffs have been deprived of all the profits, benefits and gains, which otherwise might and would have accrued to them from the completion of grading of the said rail road betwixt *Charlestown* and the *Susquehanna* river, to wit, at, &c.

4TH COUNT. And the said plaintiffs further complain, for that whereas the said plaintiffs heretofore, to wit, on the 12th of July 1836, at *Wilmington*, that is to say, at, &c., made *another agreement* in writing with the said W. and S. R. R. Co., and amongst other things in said agreement specified, to do all the grading of that part of sect. No. 9, in the *State* of *Maryland,* of the W. and S. R. R., which extends from station No. 191 to the end of the piers and wharf in the river *Susquehanna,* opposite *Havre De Grace,* according to the directions of the engineer and the specifications in said agreement, for the sum of *twenty-six* cents per cubic yard for every cubic yard excavated, the said section to be completed in a workmanlike manner, viz: one mile from station No. 191, by the 15th of October 1836, and the residue by the first day of November ensuing, which said agreement and specification, and all things therein contained, is of the tenor and in the words following, to wit:

"*Agreement between S. H. and H. H. of the first part, and the W. and S. R. R. Co. of the second part.*"

"The party of the *first* part, in consideration of the matters hereinafter referred to and set out, covenants and agrees to and

with the party of the *second* part, to furnish and deliver at the proper cost of the said party of the first part, the building materials, which are described in the annexed schedule to the said party of the second part, together with the necessary workmanship and labor on said rail road, and at such times, and in such quantities as the party of the second part shall require and designate; and faithfully, diligently and in a good and workmanlike manner, to do, execute and perform the office, work and labor in the said schedule mentioned.

"And the party of the second part, in consideration of the premises, covenants and agrees to pay the party to the first part, the sums and prices in the said schedule mentioned, on or before the first day of November next, or at such other times and in such manner as therein described. Provided, however, that in case the party of the second part shall at any time be of opinion that this contract is not duly complied with by the said party of the first part, or that it is not in due progress of execution, or that the said party of the first part is irregular or negligent, then and in such case he shall be authorised to declare the contract forfeited, and thereupon the same shall become null, and the party of the first part shall have no appeal from the opinion and decision aforesaid, and he hereby releases all right to except or to question the same in any place or under any circumstances whatever. But the party of the first part shall still remain liable to the party of the second part for the damages occasioned to him by the said non-compliance, irregularity or negligence: and provided also, that in order to the faithful and punctual performance of the covenants above made by the party of the first part, and to indemnify and protect the party of the second part from loss in case of default and forfeiture of this contract, the said party of the second part shall, notwithstanding the provision in the annexed schedule, be authorized to retain in their hands until the completion of the contract, fifteen per cent. of the moneys at any time due to the said parties of the first part. Thus covenanted and agreed by the said parties this 12th day of July 1836, as witness their seals, &c. Sebre Howard, (Seal.)

James Canby, Pres't, (Seal.)

Signed, sealed and delivered in the presence of —.  [The date above changed to 1st of November, and in the schedule the price changed to twenty-six cents, and an extra price for extra haul inserted, and the work fixed to be done by Nov. 1st 1836, before signing.]                                        WM. P. BROBSON.

### Schedule referred to above.

The above named S. H. and H. H. contract to do all the grading of that part of section No. 9 in the *State of Maryland* of the W. and S. rail road, which extends from station No. 191 to the end of the piers and wharf in the river *Susquehanna* opposite *Havre De Grace*, according to the directions of the engineer, and according to the specifications hereto annexed, for the sum of twenty-six cents per cubic yard, for every cubic yard excavated, the said section to be completed in a workmanlike manner, viz: one mile from station No. 191 by October 15th 1836, and the residue by November 1st ensuing. They also contract to make the embankment at the river from the excavation of the road, provided the haul shall not exceed a distance of eight hundred feet from the eastern termination of the said embankment, all other portion of the hauling together, not to exceed an average of eight hundred feet, and for any distance exceeding the said average, the price is to be one and a half cents per cubic yard for each hundred feet haul. The party of the second part contracts to pay to the said *Sebre Howard* and *Hiram Howard*, the said sum of twenty-six cents per cubic yard, *in monthly payments, according to the measurement and valuation of the engineer,* retaining from each payment fifteen per cent. until the final completion of the work. If any additional work, in consequence of water, grubbing or hard material is required, on the side ditch or ditches through *Cowden's* woods, the same is to be decided by the engineer, as in case of rock, &c., &c.

### Specification of the manner of grading the Wilmington and Susquehanna Rail Road.

Before commencing any excavation or embankment the natural sod must be removed to a depth of three inches from the whole surface occupied by the same, for the purpose of after-

wards sodding the slopes thereof, and all stumps, trees, bushes, &c., entirely removed from the line of the road, as directed by the engineer. In cases of embankment, a grip must be cut about one foot deep for footing the slopes and preventing them from slipping, the embankments must be very carefully carried up in layers of about one foot in thickness, laid in a hollow form, and in so doing all hauling or wheeling, whether loaded or empty, must be done over the same, the slopes of the excavations and embankments will be one and half horizontal to one perpendicular, except where otherwise ordered by the engineer, and are to be sodded with the sods removed from the original surface; side ditches and back drains must be cut whenever ordered by the engineer at the same price as the common excavation; the side ditches will, on an average, be about nine feet wide on top and about two feet deep, and will extend along a great portion of the road. In most places where embankments are to be made, the cutting of the adjacent parts is about sufficient for their formation, and as the contractor is supposed to have examined the ground and profiles, and to have formed his estimates accordingly, no allowance will be made for extra hauling; where more earth is required than is procured from the excavation, the contractor shall take it from such places as the engineer may direct, the cost *per cubic yard* being the same as the other parts. Where there is any earth from the excavations more than is required from the embankments, it shall be placed where ordered by the engineer. All the estimates will be made by measuring the excavations only. Loose rock, boulders, iron, stone or other pebbles of a less weight than one-fourth of a ton, are to be removed by the contractor at the same price as the common excavation, but in cases of larger size, or for blasting, the price shall be a matter of special agreement between the contractor and engineer; and if the former should not be willing to execute for what appears to the engineer a fair price, the latter may put the same into other hands. No extra allowance will be allowed for cutting down trees, grubbing, bailing or other accidental expenses. Measurements and estimates will be taken about

once a month, and full payment will be made by the directors after deducting 15 per cent., which deduction on each estimate will be retained until the entire contract is completed, which must be on or before —. It is to be distinctly understood by the contractors that the use of ardent spirits among the workmen is strictly forbidden.          WILLIAM STRICKLAND,
                    *Chief Engineer of the Wil. and Sus. R. R.*

And thereupon afterwards, to wit, on the said 12th of July 1836, at the county aforesaid, in consideration that the plaintiffs at the special instance and request of the said defendants, had then and there undertaken and faithfully promised the said defendants to perform and fulfil all things in said agrement on said plaintiffs behalf to be performed and fulfilled, they the said defendants undertook and faithfully promised the said plaintiffs to perform and fulfil all things in said agreement on the defendants part to be performed and fulfilled; and said plaintiffs declare, that soon after the making of the said agreement, for the purpose and with the intent of fulfilling and performing all things in said agreement on their part to be performed and fulfilled, to wit, on the 23rd July 1836, at the county aforesaid, they promptly and diligently commenced doing and executing the grading of that part of section No. 9 in said agreement set out and contracted for by them, and were fully prepared with laborers, means and instruments to execute the work in the manner and in the time specified in said agreement, for the completion of the same, and so continued actively and diligently to prosecute and do the work of grading, and all other work contracted for in said agreement, until the 17th of September 1836, when said plaintiffs were served by the sheriff of *Cecil* county with a writ of injunction, issued from the High Court of Chancery, sealed with the seal of the State of *Maryland*, and signed by the honorable *Theodorick Bland*, Chancellor, which said injunction was of the tenor following, to wit, which said writ after its formal part proceeded as follows:

We therefore do hereby command and strictly enjoin you the said *Delaware* and *Maryland* rail road company, your president and directors, agents and servants, that from henceforth you,

and each and every one of you, do absolutely forbear, desist, surcease and refrain altogether from making, constructing or completing the said wharf, contemplated and laid out by you the said *Delaware* and *Maryland* rail road company, from the lot leased by the father of the said complainant to *Martha Coffield,* on the *Susquehanna* river, and from all and every act whatsoever towards the making, completing or using in any manner the said wharf or any part thereof, and from placing any stone, gravel, earth, logs, timber, boards, or any other substance or material on said wharf, or any part thereof, or in the said river, and from driving down piles or timbers in said river, and from any other and further act touching or affecting the said road commenced by you from the *Cecil Shore* of the *Susquehanna* river, until the further order of the court of chancery. Witness the honorable *Theodorick Bland, esquire,* Chancellor, this 13th of September 1836.

Test,—RAMSEY WATERS, *Reg. Cur. Can.*

*In Chancery,* 13*th Sept.* 1836. Ordered, that writs of subpœna and injunction issue as prayed by the foregoing bill of complaint; and it is further ordered, that at any time after the said defendants have filed their answers, the court will hear a motion to dissolve the said injunction, provided the said defendants give to the said plaintiffs, or their solicitor, ten days notice thereof, and the register is directed to endorse a copy of this order on the said writ of injunction, that it may be served therewith on the said defendants.

THEODORICK BLAND, Ch'r.

On which injunction was thus endorsed: Injoined—*Noble Pennington,* Sh'ff. True copy,

Test,—RAMSEY WATERS, *Reg. Cur. Can.*

By means of which injunction the plaintiffs were prevented and delayed from executing the work in said agreement, contracted to be performed and done in the time specified in said agreement, and were enjoined and prohibited from working upon that part of the rail road in said injunction mentioned, being part of sec. No. 9 in said agreement mentioned, for a long space of time, to wit, from the said 17th of September,

the day on which said injunction was served, until the 30th of October in the same year, being the day when said injunction was appealed from and appeal bonds filed, whereby said plaintiffs suffered great delay, inconvenience and expense in conducting and performing the grading of the said rail road in said agreement mentioned, for and during the whole time the said injunction remained and continued in force; and said plaintiffs declare that at the time of making of said agreement, the ground upon which the said rail road was to be graded was laid down on the profile prepared by the engineer, and marked out by stakes to shew the width of the rail road track at the surface of the earth, and also the width of the embankment, (as referred to in the specification in said agreement,) all of which were examined by the said plaintiffs at the request of the defendants before they made and entered into said agreement. And said plaintiffs aver, that although great part of the embankment to be made was staked out and laid down in the profile to be only fifteen feet wide at the top, the engineer ordered and directed the plaintiffs to make the embankment thirty feet wide at the top along a great portion of the railroad in said agreement mentioned. And said plaintiffs further aver, that whilst they were executing the work according to the profile as aforesaid, the engineer of the defendants ordered and directed the plaintiffs to grade the rail road — feet deeper than it was laid down on said profile, whereby said plaintiffs were greatly delayed, and were prevented from completing the first mile of the road before the 20th of October 1836, which was then completed and finished according to and under the directions of the engineer aforesaid. And said plaintiffs further aver, that notwithstanding the said injunction, and all the other actings and doings of the said defendants in the premises as aforesaid, *they did with great diligence and care, with all proper and necessary means, and without any unnecessary or unavoidable delay, proceed with and continue to execute the work in said agreement specified, according to the terms and condition thereof,* in a faithful and workmanlike manner, and did observe, fulfil and keep all the terms and conditions of said agreement on their part to be observed and kept,

or except so far only as they were prevented from finishing the work in the time specified in said agreement by the injunction aforesaid, and the orders, interference and hindrance of the said defendants, and that after the said 15th of October 1836, and the said 1st of November, the time fixed for the completion of said work in said agreement, they did proceed under the orders of the engineer aforesaid, and at the request and by the permission of the said defendants, and by the authority and virtue of the agreement aforesaid, to execute the work in said agreement mentioned, according to the terms and conditions thereof, and performed and fulfilled every thing on their part by said agreement to be done and performed, from the time of the making said agreement until the 19th of January 1837; and said plaintiffs declare, that the engineer of said company estimated the work of said plaintiffs done under said agreement in the month of December 1836, according to measurement and valuation, at the sum of three thousand six hundred and some dollars, before deducting the fifteen per cent. specified in said agreement to be retained by said company until the final completion of said work; yet the said defendants disregarding the terms of said agreement, although often requested so to do, at, &c., aforesaid, have not yet paid the said sum of $3,600, after deducting the fifteen per cent. aforesaid, nor any part of the said fifteen per cent. so retained as aforesaid, *but contriving and intending to defraud and injure said plaintiffs, after paying them one thousand dollars, a part of said estimate, refused and still do refuse to pay the balance.* And said plaintiffs further aver, that according to the terms of said agreement, when there was any earth from the excavations more than was required for the embankments, it was to be placed where ordered by the engineer, *yet the defendants well knowing the premises, on the 19th of January 1837, at Wilmington, that is to say at, &c., notwithstanding the request and demand of the plaintiffs in this behalf, but intending and contriving artfully and deceitfully to defraud and injure the said plaintiffs, refused to permit the engineer to point out or order any where to deposit the earth from the excavation, although there was a large quantity of earth to be removed from the ex-*

42 v. 1

*cavations more than was required for the embankments, and also refused to pay said plaintiffs one and a half cents per cubic yard for each hundred feet haul over eight hundred feet in distance, as by the terms of said agreement they were bound and required to do, but said defendants artfully and fraudulently contriving to impose upon said plaintiffs, by forcing them to submit to an alteration of the terms of said agreement, or to be deprived of all the benefits and advantages to which they were entitled to under the same, declared the said agreement to be forfeited, and refused to comply with the terms and conditions on their part to be observed, and fulfilled and kept, whereby said plaintiffs were suddenly thrown out of employment, and unjustly and fraudulently prevented completing the work contracted to be done by them as aforesaid, and have lost all gains and profits which they might and would otherwise have made and acquired from finishing the work according to said agreement.*

5TH COUNT. And the said plaintiffs further complain, for that whereas after the said 15th October, and the said 1st November, the times fixed for the completion of the said work and labor designated in the said agreement, on the 12th July 1836, stated in the fourth count of this nar, the said plaintiffs at the special instance and request of the said defendants, to wit, on the 2nd November 1836, at *Wilmington,* to wit, at, &c., aforesaid, undertook and agreed with the said defendants to finish and complete all and singular the work and labor in the agreement aforesaid, which then remained unfinished and incomplete, at the prices and in the manner stipulated in the said agreement, and to do and perform the same within a reasonable time, and that the said defendants in consideration thereof, promised and agreed to pay the said plaintiffs all that was then due them, and also for the said work and labor the prices stipulated in the said agreement, and to do and perform all and singular the covenants on the part of the said defendants to be done, as mentioned in the said agreement; and the plaintiffs further aver, that in consideration thereof, they the said plaintiffs did proceed diligently and faithfully with the said work and labor at the said instance and request of said defendants, and that

while they were so employed faithfully and diligently executing the said work and labor, and after the same had progressed considerably, the said defendants refused to do and perform the covenants and agreements on their part to be done and performed, and that said defendants, and their agents and engineers, refused to suffer and permit the said plaintiffs to proceed with the said work and labor, and to finish and complete the same according to the terms of the said agreement; and the plaintiffs in fact say, that they were prevented from finishing and completing all the said work and labor in the manner stipulated in the agreement aforesaid, by the orders, directions, hindrance and interference of the said defendants, their agents and engineers, and that they the said plaintiffs, were ready and willing to have done and performed, and offered to do and perform all and singular the said work and labor within a reasonable time, and in the manner stipulated in the agreement aforesaid, of which said defendants then and there had notice, to wit, at the county aforesaid ; but the plaintiffs were prohibited and prevented from doing the said work and labor at the times and in the manner aforesaid, by the refusal of the said defendants to observe and perform the covenants and agreements on their part to be done and performed as set forth in the written agreement aforesaid, and by the interference and hindrance of said defendants, and their agents and engineers, to wit, at the county aforesaid. By reason of which said unjust and fraudulent conduct on the part of the said defendants the said plaintiffs were prevented from realizing the benefits, profits and advantages which they would have derived from the completion of the said work and labor, and the observance of the said last mentioned agreement on the part of the said defendants ; wherefore the said plaintiffs say they are injured, and have suffered damages fifty thousand dollars.

6TH COUNT. And the said plaintiffs further complain, for that whereas on the 2nd of November 1836, at the special instance and request of the defendants they undertook and agreed with the defendants, to finish and complete the work and labor upon section number nine on the rail road of the defendants, which

runs from *Wilmington* to the *Susquehanna* river, upon the following terms and conditions, that is to say : (here insert the agreement of the 12th July 1836, leaving out the words, namely: "one mile from station number one, and the residue by November the first ensuing," and inserting in place thereof, "and within a reasonable time,") and that the said defendants in consideration thereof, promised to pay for such work and labor the prices stipulated as aforesaid, and that in pursuance of said agreement, did forthwith proceed with the said work and labor up to the month of January 1837, when they were prevented by the said defendants from further progressing in said work, and from finishing and completing the same according to the terms of said agreement in the first instance, because the said defendants refused to suffer their engineer to order or direct, where the surplus earth from the excavations on said section over and beyond the amount of earth required for the embankments in the same section, should be placed, as they were bound to do by the said agreement, and afterwards in the same month, fraudulently and illegally entirely stopped the said plaintiffs, and prevented them from going on with and completing the same, and afterwards gave the work to some body else, by which the said plaintiffs were prevented from finishing and completing their said agreement; and the said plaintiffs further aver, that if they had been permitted to go on with and finish the said work under said contract, as they offered to said defendants and intended to do, they would have made large profits, to wit, fifty thousand dollars. Whereas by the said conduct of the said defendants they not only lost the said profits, but were put to other losses and expenses by being left in the possession of a large force of men and materials, horses and carts, which they had got together for the purpose of completing said work.

7TH COUNT. And whereas also the said defendants afterwards, to wit, on the 1st of August 1837, at the county aforesaid, were indebted to the said plaintiffs in the further sum of fifty thousand dollars, for the work, labor, care and diligence by the said plaintiffs before that time done and performed, in

and about the business of the said defendants, and for them, and at their special instance and request, and also for divers materials and other necessary things by the said plaintiffs before that time found, and provided and applied in and about that work and labor for the said defendants, and at their like special instance and request, and being so indebted the said defendants, in consideration thereof afterwards, to wit, on the day and year aforesaid, at the county aforesaid, undertook and promised the said plaintiffs to pay them the last mentioned sum of money, nevertheless the said defendants not regarding their said promises and undertakings, but although often requested so to do, by the said plaintiffs, have not yet paid the said sum of money or any part thereof, but refuse so to do, to the damage of the said plaintiffs, in the sum of fifty thousand dollars.

8TH COUNT. And whereas also heretofore, to wit, on the —— day and —— year at the county aforesaid, in consideration that the said plaintiffs at the like special instance and request of the said defendants, had before that time undertaken to perform certain work, labor and services in and upon the property of the said defendants, to wit, on the rail road between —— at the county aforesaid. And said plaintiffs aver, that they did perform the said work and labor upon the property aforesaid, and the said defendants undertook and then and there faithfully promised the said plaintiffs to pay them so much money as they therefor reasonably deserve to have of the said defendants, when they the said defendants should be thereunto afterwards requested; and the said plaintiffs aver, that they reasonably deserved to have of the said defendants the further sum of —— like lawful money, to wit, at the county aforesaid, whereof the said defendants afterwards, to wit, on the day and year last aforesaid there had notice, nevertheless the said defendants not regarding their said promises and undertakings, but contriving and fraudulently intending craftily and subtily to deceive and defraud the plaintiffs in this behalf, have not as yet paid the said sums of money, or any part thereof to the said plaintiffs, although often requested so to do, although they the said defendants afterwards, to wit, on the —— day of the —— of the

year —— last aforesaid, at the county aforesaid, were requested by the said plaintiffs so to do, but the said defendants to pay them the same have hitherto wholly neglected and refused, and still do neglect and refuse, to the damage of the said plaintiffs in the full sum of, &c.

9TH COUNT. And the said *S.* and *H. Howard*, by their attorney aforesaid complain, for that whereas the W. and S. R. R. Co. heretofore, to wit, on the 12th of July 1836, at *Wilmington,* that is to say at *Cecil* county aforesaid, made another agreement in writing with said plaintiffs, by which said agreement amongst other things therein set out, the plaintiffs agreed to do all the grading of that part of section No. 9 of the *Wilmington* and *Susquehanna Rail Road* in the State of *Maryland,* which extends from station No. 191 to the end of the piers and wharf in the river *Susquehanna* opposite *Havre De Grace,* according to the directions of the engineer and the specifications in said agreement, for the sum of twenty-six cents per cubic yard for every cubic yard excavated, the said section to be completed in a workmanlike manner, viz: one mile from station No. 191 by the 15th of October 1836, and the residue by the 1st of November ensuing, which said agreement and specification, and all things therein contained is set out in *totidem verbis* in the 4th count of this declaration, as by reference thereto will fully appear. And thereupon afterwards, to wit, on the said 12th July 1836, at the county aforesaid, in consideration that the plaintiffs, at the instance and request of the defendants, then and there undertook and faithfully promised the said defendants to perform, fulfil and keep all things in said agreement on plaintiffs part to be performed, fulfilled and kept, they the said defendants at the same time and place undertook and faithfully promised the said plaintiffs to perform, fulfil and keep all things in the said agreement on the defendants part to be performed, fulfilled and kept; and said plaintiffs declare that soon after the making of said written agreement, for the purpose and with the intent of fulfiling and performing all things in said agreement on their part to be performed and fulfilled, to wit, on the 23rd of July 1836, at the county aforesaid, they did promptly and

diligently commence grading that part of section No. 9, in said agreement mentioned, and were fully prepared with laborers, means and utensils to execute the work in the manner and within the time specified in said agreement for the completion of the same, and so continued actively and diligently to prosecute and do the work of grading said rail road and all other things, according to the said agreement, until the 17th of September 1836, when said plaintiffs were served by the sheriff of *Cecil* county with a writ of injunction, prohibiting said plaintiffs from working any longer upon a certain portion of said rail road in said agreement specified, which injunction issued from the high court of chancery of the State of *Maryland* in due form of law, and is set out *in eisdem verbis* in the 4th count of this declaration, together with the sheriff's return and the chancellor's order on the said injunction, as by reference to said 4th count will more fully appear. By force of which injunction the plaintiffs were prevented and delayed from executing the work in said agreement contained in time specified therein for its completion, and were enjoined from working upon part of the road mentioned in the said agreement for a long space of time, to wit, from the said 17th of September 1836, being the day on which said injunction was served on said plaintiffs, until the 30th of October in the same year, which was the day when said injunction was appealed and appeal bond filed; and the said plaintiffs aver, that the engineers of the company directed the plaintiffs to make the embankment on the rail road in the agreement mentioned, many feet wider than it was marked out on the plat of the road that was made by the engineer, and examined by the plaintiffs at the request of the defendants before entering into the agreement aforesaid, and said engineer also directed the plaintiffs to make the grade of the said road many feet deeper than it was laid down on said platt, whereby the said plaintiffs were prevented from completing the said first mile of said road before the 20th of Oct. 1836, which was then completed according to the directions of the engineer, of which the defendants had notice, then and there, at the county aforesaid. And the plaintiffs say, that

notwithstanding the said injunction and the directions of the engineer aforesaid, they the said plaintiffs did afterwards proceed and continue from the time of making said agreement, until the time when the defendants declared the said contract forfeited as hereinafter stated, duly to comply with and progress in the execution of said agreement, without being guilty of any irregularity or negligence, and did perform, fulfil and keep all things on their part in said agreement to be performed and fulfilled, and did, after the said 15th day of October and the said 1st day of November, in the year 1836, proceed under the orders of the engineer aforesaid, and at the request of the said defendants, and by the authority of said agreement, and under the same, to execute the work in said agreement, according to the terms thereof. And the said plaintiffs declare, that after the said 15th day of October and the 1st day of November, to wit, on the 2nd day of November, in the year 1836, in consideration of the premises, and that the plaintiffs then and there, at the request of the defendants, undertook and faithfully promised the said defendants to perform, fulfil and keep all things in the said agreement on the part of said plaintiffs to be performed and fulfilled in a reasonable time, they the said defendants undertook and faithfully promised the plaintiffs to perform and fulfil all things in said agreement on the part of the said defendants to be performed and fulfilled and kept, according to the true intent and meaning of the said agreement, to wit, on the day and year last aforesaid, at the county aforesaid. And the plaintiffs aver, that they, confiding in the promise and undertaking of the said defendants, secondly and lastly above made, from and after the 2nd day of November, in the year 1836, did proceed and continue to execute the work and labor in said agreement mentioned, according to said agreement, and to perform, fulfil and keep all things in said agreement on their part to be performed, fulfilled and kept, until the 19th day of January, in the year 1837; yet the said plaintiffs in fact say, that the defendants, before the 19th day of January, 1837, contriving wrongfully and unjustly to injure the plaintiffs, did not, nor would perform, fulfil nor keep the

matters and things on their part in said agreement to be performed, fulfilled and kept, according to their undertakings and promises firstly and secondly above made, but thereby craftily and subtily deceived the said plaintiffs in this, to wit, that the said defendants refused to permit the engineer to order or point out any place where the plaintiffs might place the earth from the excavations, when there was a large quantity of earth from the excavations, more than was required for the embankments, and also refused to pay said plaintiffs one cent and a half per cubic yard for each hundred feet haul of the earth from the excavation of the road to make the embankment at the river, although the haul from the excavations to the eastern termination of the embankment at the river, exceeded an average distance of eight hundred feet, and also refused to pay plaintiffs one and a half cents per cubic yard for each hundred feet haul of the earth from the excavation of the road, when all the other portions of the haul exceeded an average distance of eight hundred feet, as by the said agreement they were required to do. But the said defendants, after they had, as above stated, broken said contract, and disregarded their promises and undertakings, by refusing to comply with the terms of said contract, in the manner hereinbefore stated, and when the said plaintiffs had duly complied with the said contract, and whilst the same was in due progress of execution, and the said plaintiffs were not irregular or negligent, and before a reasonable time had been allowed for said plaintiffs to complete the said contract, the said defendants attempted to declare the said contract forfeited and null, without the consent and against the will of said plaintiffs, to wit, on the 19th day of January, in the year 1837, at the county aforesaid, whereby the said defendants did not, nor would suffer or permit the said plaintiffs to proceed any further to execute the said contract, but then and there wrongfully discharged the said plaintiffs from any further completion of their said agreement, and hindered and prevented them from finishing the work in said contract specified. Nor did the said defendants pay the said plaintiffs twenty six cents per cubic yard for every cubic yard of earth excavated on said

road, according to the measurement and valuation of the engineer, but to pay the same or any part thereof the said defendants, although often requested so to do, to wit, at, &c., have hitherto wholly refused, and still refuse, whereby the said plaintiffs say that they have not only been refused payment of the money due them for work done on said rail road before the said 19th day of January, 1837, but have also been deprived unjustly of all the profits, benefits and gains which otherwise might and would have accrued to them, if they had been permitted by said defendants to complete the work in said contract mentioned.

Whereupon, the said plaintiffs say they are injured and defrauded, and have sustained damages to the amount of fifty thousand dollars, to wit, at, &c., and thereupon they bring their suit, &c.

To this declaration the defendant pleaded:

1st. Non-assumpsit, and

2nd. Payment and satisfaction, on which issues of fact were joined.

3RD PLEA AS TO 4TH COUNT. "That after the making of the said supposed agreement in the said fourth count mentioned, to wit, on the 18th January 1837, the said plaintiffs had become, and were for a long space of time then next before, had been, irregular and negligent in the prosecution of the work in said agreement mentioned, and had not duly complied with the terms of the said agreement, to wit, at, &c.; and the said defendant in fact further saith, that after the making of the said agreement, and before, and on the said 18th January 1837, at, &c., the said work and labor in the said agreement mentioned, was not in due progress of execution, to wit, at, &c., of all which said premises the said plaintiffs and this defendant then and there, to wit, on, &c., at, &c., had notice; and the said defendant in fact further saith, that afterwards, and whilst the said plaintiffs so were and continued to be irregular and negligent in the execution of the said agreement, and without having duly complied with the terms of said agreement, and whilst the said work was not in due progress of

execution, this defendant being of opinion that the said agree-ment had not been duly complied with by the said plaintiffs, and that the work in said agreement mentioned, was not in due progress of execution, to wit, on, &c., at, &c., in virtue of the provisions of said agreement, and in exercise of the authority thereby given and reserved, did declare the said agreement to be forfeited, as for the cause aforesaid this de-fendant might lawfully do, of all which premises the said plain-tiffs afterwards, to wit, on, &c., at, &c., had notice. By rea-son whereof, and by force and effect of the said agreement, the same agreement thereby became and was null. And this, &c."

The 4th plea as to the 5th count; the 5th plea as to the 6th count, and the 6th plea as to the 8th count, were similar to the 3rd plea as to the 4th count, and relied upon a forfeiture of the contract of July 1836, announced on the 18th January 1837, as a bar to, &c.

7TH PLEA TO 1ST COUNT. That after the making of the said supposed contract in the said *first* count mentioned, and before the commencement of this suit, to wit, on the 12th July 1836, a certain agreement by deed in writing, was then and there made and entered into by and between the said plaintiffs and the said defendant, and which said last mentioned agree-ment was of the tenor, following, to wit. (This plea then set out at length the agreement of 12th July 1836—see ante.) And said defendant in fact says, that the said part of sec. No. 9, in the State of *Maryland*, of the W. and S. R. R. which extends from station No. 191 to the end of the piers and wharf in the river S., opposite *Havre De Grace*, as mentioned in said last mentioned agreement, is a part of that part of the said rail road between *Charlestown* and *Havre De Grace*, in said first count mentioned, and which is thereby alleged to have been included in the said supposed contract in said count men-tioned, and not another or different part, of which premises the said plaintiffs and this defendant, before, and at the time of the making of the said agreement, in this plea recited, had notice, to wit, at, &c.; and the said defendant in fact says, that after the making of the said agreement in this plea above

recited, the said plaintiffs, under and in virtue of the said agreement in this plea above recited, commenced and prosecuted the work on that part of section No. 9, in the State of *Maryland*, of the W. and S. R. R., which extends from station No. 191, to the end of the piers and wharf in the river *Susquehanna*, opposite *Havre De Grace*, as mentioned in the same agreement; and that all the work which was done by said plaintiffs on that part of said section No. 9, was commenced, prosecuted and done, under and in virtue of said agreement in this plea above recited, and not otherwise, nor under any other or different agreement. By reason of which said premises, the said supposed contract in the said first count mentioned, became merged, extinguished, waived, released and abandoned. And this, &c.

The 8th plea to 2nd count and 9th plea to 3rd count, were similar to 7th plea to 1st count.

The plaintiffs demurred to the 3d, 4th, 5th, 6th, 7th, 8th and 9th pleas, in which the defendants joined, and the county court (CHAMBERS, C. J. and HOPPER and ECCLESTON, A. J.,) gave judgment on the demurrers for the defendant, from which the plaintiffs prosecute this appeal.

The cause was argued before STEPHEN, ARCHER and DORSEY, J.

By H. STUMP and REVERDY JOHNSON, for the appellants, and

By O. SCOTT and NELSON, Att'y Gen'l of the U. S. for the appellees.

STEPHEN, J., delivered the opinion of this court.

This suit was instituted in the court below upon two contracts, the one bearing date in the year eighteen hundred and thirty-five, and the other in the year eighteen hundred and thirty-six. The appellee, the defendant in the court below, filed several special pleas to the plaintiffs declaration, which contained several counts; and to those pleas the appellants, who were the plaintiffs, demurred generally. The defence of the defendant was founded upon an alleged extinguishment of the contract of 1835, by the operation of the contract of 1836,

which, it is admitted by the parties, covered a part of the work to be done under the contract of 1835, and for which a different price was to be paid. The suit being upon the contract of 1835, for the recovery of damages, for not being permitted to execute it by the wrongful acts and doings of the defendants, if the defence of the defendants is well founded, that it was extinguished, either wholly or partially, the action on the contract itself, which was an entire one for the graduating the road from *Charlestown* to *Havre de Grace*, for twenty-four cents per cubic yard, cannot be sustained. To repel the inference of an extinguishment, either general or partial, of the contract of 1835, the plaintiffs aver in their declaration, that the contract of 1836 was entered into by them with an express understanding on their part, and that they so declared to the defendants at the time, that the contract of 1835 was not waived or abandoned by that of 1836, except so far as the road covered by the first contract was embraced by the second ; and the plaintiffs contend that the silence of the defendants, when so informed, was evidence to go to the jury from which their assent might be inferred. But, according to the established principles of pleading, the fact of assent ought to have been avered, and not the evidence of it, (if the evidence stated was admissible to control or vary the written contract,) which is always matter for the consideration of the jury, and not for the decision of the court. See *Gould's pleadings,* 152, where it is said "all facts essential to the right of action or the defence must in general be expressly and substantively alleged. Hence stating the mere *evidence* of a material fact is not sufficient; the fact itself must be stated, otherwise the allegation will present no subject to which the law can be applied. Besides such a mode of pleading would, if admissible, refer the matter of fact in question to the court, instead of the jury." He there puts the case of an action of *trover*, where the plaintiff alleges a property in the goods, the loss, the finding, and a demand and refusal, but omits to aver a conversion, and says the declaration would be ill. This being a suit upon the contract to recover damages, and the contract being en

tire and indivisible, the suit cannot be sustained, if any part of it has been annulled by the act and agreement of the plaintiffs themselves; and looking to the pleading in the case, as spread upon the record, we are bound to assume that a part of it was annihilated by the consent of the plaintiffs themselves. In *Chitty on Contracts* it is said to be "a general rule that an entire contract cannot be apportioned; and if a party undertake to complete a certain act, before his claim to remuneration is to accrue, he cannot recover for a partial performance, although the completion was prevented by accident, as fire, &c. To the same effect this court have decided, in 6 *Harr. & John.* 44, where they say, "The agreement formed an entire contract, and to enable the plaintiff to recover on it he must prove a performance, or tender to perform every thing required by it on his part to be performed." The contract being vacated and rendered legally inoperative in part by the consent of the plaintiffs themselves, the conclusion is inevitable that no action can be sustained upon it for the recovery of damages, on the ground that the plaintiffs were prevented by the wrongful act of the defendants from fulfilling it. Where the original contract is rescinded by the parties, after it has been performed in part, either by a waiver of the performance of the balance of the contract, or entering into a new one so inconsistent with the first as to be wholly irreconcilable, in such case a recovery may be had for the part performance on a general count, but not by declaring on the contract itself. To this effect is the case in 6*th Harris & Johnson's Reps.*, 38. If the entirety of the contract is disaffirmed by receiving a partial benefit, the plaintiff may recover for the work done on a general count, but not on the special agreement, (*Chitty on Contracts*, 273.) The same principle is to be found recognised (if authorities be necessary for so plain a proposition) in 12*th John. Reps.* 165. In that case the plaintiff "agreed to work for the defendant ten and a half months, and spin yarn, at three cents per run; and afterwards left the service of the defendant, and brought an action against him for spinning 845 runs of yarn, at three cents per run; it was held that the contract

of the plaintiff was entire and must be performed as a condition precedent before he could bring an action against the defendants for the price of his labour." The suit upon the second contract of the 12th of July, 1836, we think ought, upon the pleadings in the case, to have been sustained. It is a rule in pleading that "each party tacitly admits all such traversable allegations on the opposite side, as he does not traverse. For, as each party is allowed to deny, in some form, (either by a general or precise traverse,) all material facts alleged against him, the omission by either party to traverse any such fact, alleged by his adversary, is justly considered as an admission of it." *Gould's Pleading*, 152.

It appears by the *fourth* count of the plaintiffs declaration that the defendants were in default in not paying them a large sum of money according to contract, which was due according to the estimate of the engineer for work done in the month of December 1836, which was due and payable before the contract was declared to be forfeited; and also that they refused to permit the engineer to designate or point out a place where the surplus earth arising from the excavations was to be deposited; and also refused to pay the plaintiffs one other sum of money for extra hauling beyond a certain distance, as specified in their said agreement, and artfully and fraudulently contriving to impose upon said plaintiffs by forcing them to submit to an alteration of the terms of said agreement or to be deprived of all the benefits and advantages to which they were entitled under the same, declared the said agreement to be forfeited, and refused to comply with the terms and conditions thereof, whereby the said plaintiffs were thrown out of employment, and fraudulently prevented from completing, &c., and have lost all the gains and profits, &c.

In the plea filed by the defendants to this count of the plaintiffs declaration, these breaches of the contract on their part are not denied, and of course, according to the established principles of pleading, they are to be taken and considered as admitted. Such being the state of the pleadings, and the admissions of fact flowing from them, it follows as a necessary

consequence that such annulling of the contract was a breach thereof, for which the plaintiffs had a right to recover the damages flowing therefrom, and also for the damages resulting from the previously enumerated breaches of the agreement. It was not necessary to aver damages in the plaintiffs fourth count. In 1st *Saunders on Pleading and Evidence*, 165, it is said: "If the contract be broken the plaintiff will be entitled to some damages, however small, whether they be stated or not, for damages will be implied from the very breach itself; and wherever the damages sustained necessarily and naturally arise from the breach complained of, and may therefore be implied, they need not be stated; otherwise they must, in order to prevent the surprise on the defendant, which might otherwise ensue at the trial; and if he do not state them particularly he will not be permitted to prove them in evidence." In the same book, at page 513, it is said : "Where damages are the principal object of the action the declaration should *conclude* 'to the damage of the plaintiff' of a sum sufficient to cover the real damages sustained." So, also, same book and same page, speaking on the same subject, it is said : "An omission in stating damages, when necessary, would be bad on demurrer, and perhaps after judgment." So, also, in *2d Johns. Reps.*, 149, it is said : "The damages sustained are matter of evidence, and need not be alleged, nor are they rarely ever stated, but in a general manner."

In this case the plaintiffs declaration concludes in the usual manner, and charges that they "have sustained damages to the amount of fifty thousand dollars, to wit, at the county aforesaid, and therefore they bring their suit, and so forth." This general conclusion is sufficient as to all the counts in the declaration, and obviates the necessity of charging damages generally in each one of them. The judgment of the court below is reversed, and a *procedendo* ordered.

JUDGMENT REVERSED, &c.