## CORINNE M. ALEXANDER *v.* PACIFIC MUTUAL LIFE INSURANCE COMPANY.
[No. 94, October Term, 1933.]

*Decided January 17th, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*J. Craig McLanahan,* with whom were *France, McLanahan & Rouzer,* on the brief, for the appellant.

*William L. Marbury, Jr.,* and *Jesse Slingluff, Jr.,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

The plaintiff in a suit on a life insurance policy issued to her deceased husband, Walter W. Alexander, appeals from a judgment entered on a verdict directed for the defendant company, and the question is whether the company might still be liable on the policy for the full original amount of it, after a premium had gone unpaid through a period of grace specified, and after negotiations had been opened for a new contract for insurance in a smaller amount. There is no dispute on essential facts, most of the facts being presented in an agreed statement.

Walter W. Alexander was one of a partnership of Baltimore agents for the Pacific Mutual Company, and he took out in that company on December 31st, 1928, a policy for $50,000. The annual premiums due before December 31st, 1931, were paid, but the premium due on that date was never paid. The period of grace specified was thirty-one days, and it was stipulated in the policy that, if a premium remained unpaid throughout that period, the policy "shall thereby be made void and without value, except as set forth in the paragraphs designated 'Non-Forfeiture,' 'Options on Completion of Life Expectancy Period,' and 'Automatic Non-Forfeiture'." These paragraphs gave the insured after default an election among three courses: (1) To take the cash surrender value; (2) to have the policy indorsed for a reduced amount; and (3) to have the insurance for the face amount of the policy, less any indebtedness, continued for a term specified, but without the right to loans. The third course was fixed upon by the policy as that to be followed if the insured failed to elect. The options, however, were

for applications of the cash surrender value of the policy, less any indebtedness of the insured, and that value had in this instance been consumed by policy loans.

The company had issued instructions to its agents to endeavor to conserve business by arranging reissues of lapsed policies, or changes, upon terms to the advantage of the insured, and it promised co-operation by the company in quoting terms, and otherwise. Reissues after lapses were, according to the instructions, to be made upon evidence of health, and by the procedure regularly followed in cases of reinstatement. "Restoration" was the subject of a special clause that: "After any default in payment of premium this Policy, if not surrendered to the Company, may be restored to full force and effect on written application by the insured to the Home Office of the Company and the payment of premiums to date of restoration with interest thereon at the rate of six per centum per annum, provided the Insured shall with such application submit evidence of insurability satisfactory to the company."

During January of 1932, the insured, because of worry over financial difficulties and ill health, went to a sanitarium, leaving with an associate who handled all his personal insurance instructions to reduce the full amount carried, as he (Alexander) could not possibly carry it all. He said he was interested in retaining all policies that had disability coverage, and the Pacific Mutual policy contained coverage to the amount of $300 a month. This was the maximum amount of such coverage, and was allowed on policies of $20,000 or more; and the associate decided, as he testified, to cut the insurance under this policy to $20,000. Accordingly, on January 23, the cashier of the insured's firm, a Miss Patz, forwarded to the company on one of its forms a request: "Please reissue in reduced amount of $20,000 with $300.00 P. T. D. Benefits." It was received by the company on January 29th, and replied to on February 2nd; on a printed form of letter inclosing, "for completion," a form for application for the reissue mentioned. This reply form was

filled in with specifications for the reissued insurance, and a space for a time limit, "To complete papers and take settlement," was filled with the date: February 19th, 1932. The form of application enclosed was filled in by Alexander after his return, on February 8th, was forwarded to the company on that day, and was received by the company on February 12th, Alexander's personal check, dated February 10th, to the order of the insurer, for $149.80, the amount of premium for the new, reduced insurance, was deposited to the credit of the Pacific Mutual Company on the next day, February 11th, went through the clearing house, and the amount was transferred to the account of the company on February 12th, without knowledge on the drawee's part that Alexander had died.

On that morning of February 12th, about 9.20 o'clock, the insured, drawer of the check, had killed himself. Proof of death having been supplied, the company, accepting the contract for $20,000 of insurance as a completed one, paid that amount, and the beneficiary, the widow, has sued for the additional amount to make up the sum of $50,000, the amount of the original policy. More particularly, then, the question is whether under the circumstances recited there was, at the time of Alexander's death, a contractual obligation on the part of the company to pay the beneficiary of the deceased this sum of $50,000, specified in the original policy.

The stipulation of the policy that it should become void upon failure of the insured to pay a premium within the additional time given must, of course, be allowed its full effect, in so far, at least, as that effect has not been removed, and the obligation resumed, in some way. "The policy of insurance constituted the contract between the parties; and, as we have seen, that instrument expressly provided that in case the premium was not paid at the time when due by the terms of the policy, the appellee should not be liable, and the policy should cease and determine. Upon default, therefore, in the payment of the premium, as required by the terms of the policy, that instrument became a nullity, and

was no longer of any effect whatever; and it could only be revived and the risk resumed, at the option of the appellee." *Busby v. Life Ins. Co.,* 40 Md. 572, 583; *Bradley v. Potomac Co.,* 32 Md. 108, 115. Consequently, in this case, at the end of January,.1932, the company, having taken no further action, was under no obligation whatever to Alexander as a policy-holder, except as the old relationship might be carried further under one of the specified options; and it was not carried further under any of these. Subsequent assumption of the obligation could only be assuming it anew.

It is conceded that the insurance for $20,000 could constitute only a new contract. Whether it was contemplated that a fresh policy should be made out for it, or that the old policy should be made use of, is not stated in the discussions, but the old policy was referred to as to be reissued or changed to give insurance for the reduced amount. The application, according to the printed form, was for "change of this policy by alteration, endorsement or rewriting." But, whatever the mere paper to be used, it was clearly the understanding in the negotiations, as far as they went, that the terms of the contract, if completed, other than the principal terms of the amounts of insurance and premiums, should be those of the original policy. Throughout the negotiations the same policy was mentioned, by number or otherwise, as entering into the new contract. An entirely new contract would, as conceded, result from such an ingrafting of the new terms on an old one. *Howard v. Wilmington & Susq. R. R. Co.,* 1 Gill, 311, 341; *Allen v. Sowerby,* 37 Md. 410; *Williams v. Md. Glass Corp.,* 134 Md. 320, 327, 106 A. 755; *L. R. A.* 1915B, 3, note.

It is in these references to the old policy in the negotiations that the appellant finds also a recognition of an interim restoration by the company of the insurance for the original amount of $50,000. Mentions of reissuing the old policy, changing it, taking it otherwise as supplying terms of the new contract of insurance, are interpreted as a recognition of its existence for all its original purpose until the expiration of

the time specified for completing papers and taking settlement for that new contract, and as evidencing either a waiver of the lapse of the old insurance for $50,000 at the end of January, or a new, interim contract to restore the obligation for that amount thereafter. Either process would, of course, be at odds with that specified in the policy for restoration; and there is no explicit statement in the communications of the parties of an intention that an obligation to pay the old amount of insurance should be restored or extended in any manner. It is not suggested that the overdue and unpaid premium, or any part of it, or any premium at all, should be paid for such an extension. All that passed between the parties followed from the limited request on behalf of the insured, before the lapse of the old insurance, that there be a reissue for the reduced amount. So far as appears, the communications were confined in purpose and intention to the formation of what is conceded to be a new contract for $20,-000, and it was this purpose only that brought out references to the old policy. However the parties might have negotiated for temporary, interim coverage if their attention had been directed to it, or if they had been more foresighted, they did not do so. If on either side it was contemplated that the obligation for the old amount should be renewed, the evidence placed before the court contains no indication of it, nothing from which it could reasonably be inferred, and the precise request only for a reissue for the reduced amount would seem to prevent attaching to the reply by the company, inclosing the form of application, any significance beyond that purpose.

For these reasons this court concurs in the ruling of the court below. Other objections raised to the theories of waiver or restoration of the original insurance, and a contention that the contract for the reduced insurance had been completed by the papers exchanged and by payment of the insured's check without notice of the death intervening after the deposit of it, need not be discussed.

*Judgment affirmed, with costs.*