RUBINSTEIN, Indiv. and as Adm'x of the Estate of Morris I. Rubinstein *v.* JEFFERSON NATIONAL LIFE INSURANCE COMPANY ET AL.

[No. 200, September Term, 1972.]

*Decided March 27, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SMITH, DIGGES and LEVINE, JJ.

*Alexander R. Martick* for appellant.

*Edward C. Mackie,* with whom were *Thomas G. Andrew* and *Rollins, Smalkin, Weston & Andrew* on the brief, for Jefferson National Life Insurance Company, part of appellees. *Francis J. Valle,* with whom was *David J. Preller* on the brief, for Sigmund C. Aiken, other appellee.

LEVINE, J., delivered the opinion of the Court.

The sole question we are called upon to decide here is whether the Superior Court for Baltimore City (Perrott, J.) erred in ruling as a matter of law that the insurer under a life insurance policy is not barred by waiver or estoppel from asserting a lapse of that policy due to non-payment of the premium. The facts presented by appellant (plaintiff below) were uncontradicted and are not in dispute. At the close of her case, which was brought to recover the proceeds of the policy, the trial judge directed a verdict against her. From the judgment for costs entered upon that verdict, this appeal is taken.

On October 17, 1966, appellee, Jefferson National Life Insurance Company (the insurer), issued a policy of ordinary life insurance to Morris I. Rubinstein (the insured). At that time, the insured paid the first quarterly premium of $112.63. Appellant, Blanche Rubinstein, widow of the insured, was the sole beneficiary. The pertinent provisions in the policy are:

". . . Immediately upon default in payment of any premium, this policy shall be null and void. . . .

"REINSTATEMENT.

"If this policy shall lapse because of default in payment of premium, it may be reinstated within three years from the due date of the premium in default, upon presentation of evidence of insurability satisfactory to the Company and upon payment of all arrears of premiums. . . .

"GRACE IN PAYMENT OF PREMIUMS.

"A grace of thirty-one days . . . during which time this policy will remain in force, will be allowed for the payment of all premiums except the first; . . . .

* * *

"THE CONTRACT.

". . . No person can make, alter or discharge this contract or extend the time for payment of premiums, nor can this contract be varied or altered or its conditions waived or altered in any respect except by the written agreement of the Company signed by the President, a Vice-President, Secretary or Assistant Secretary. . . ."

On February 10, 1967, an agent of the insurer, Sigmund C. Aiken (Aiken), who is the other appellee, called upon the insured and persuaded him to add a dis-

ability waiver of premium rider to the policy, pursuant to which the insured handed to Aiken a check in the sum of $5.46 as the initial payment for the added benefit. As of that time, however, the second quarterly premium for the policy in the amount of $112.63 had not been paid, although it had become due on January 17. Thus, the grace-period provision was then operative, and continued to be so until February 17, when it expired.

The insured died on April 12, 1967, with the second quarterly premium never having been paid, and the insurer thereafter refused to pay appellant's claim. In prosecuting her case, she relied for her proof upon a group of exhibits and Aiken's deposition, portions of which were read into evidence.

Aiken testified that when he sold the rider to the insured on February 10, he reminded him that the quarterly premium was unpaid; that the rider would not become effective until it was paid; and that the insured acknowledged this and promised to mail his check for the second quarter. He also testified that he spoke to him several times thereafter during a number of personal visits and telephone conversations. Prior to the expiration of the grace period on February 17, he told the insured that payment of the quarterly premium would keep the coverage in force; and after that date, he told him that the policy had "technically lapsed;" that payment and evidence of "good health" would suffice to reinstate the policy. One such discussion occurred as late as March 31, when Aiken called upon the insured for the purpose of completing a new application for the rider, the original having contained incorrect information pertaining to height and weight.

Apparently, the insurer was never made aware that the insured had died on April 12 and therefore retained the rider premium, subject to reinstatement of the policy, until May 3 when it finally issued its check for a refund of the $5.46 and closed its file.

At the conclusion of appellant's case, the trial court, in directing a verdict for appellees, ruled as a matter of

law that the insurer was not barred by waiver or estoppel from asserting that the policy had lapsed for nonpayment of the January 17 premium. In attacking that ruling, appellant argues that Aiken's conduct in accepting the rider application and premium on February 10 while the grace period was in effect; the acceptance of the corrected application on March 31 after the policy had lapsed; Aiken's reminders of the policy status; and the retention of the premium by the insurer all led the insured to believe that he was still covered.

Undoubtedly, the short answer to appellant's contention is that nowhere in her case was there any evidence of acts, conduct or statements that could remotely have allowed the insured to be misled into believing the policy was in effect after February 17. Apart from the policy language itself, her own evidence was uncontradicted in showing that the insured was told on February 10 that payment was required; and after February 17, that the policy had lapsed and payment coupled with reinstatement was necessary for coverage to be effective.

It is well-settled that if an insurance policy contains a provision for its forfeiture for nonpayment of premiums, the insurance company may avoid the policy on the insured's failure to pay a premium, *Alexander v. Life Ins. Co.,* 166 Md. 112, 170 A. 522 (1934) ; *Burns v. Prudential Ins. Co.,* 162 Md. 228, 159 A. 606 (1932). But, it is equally well-recognized that the right of an insurer to forfeit or avoid the policy may be lost by the doctrine of waiver or estoppel, *McFarland v. Mutual Auto Ins. Co.,* 201 Md. 241, 93 A. 2d 551 (1953) ; *Casualty Co. v. Arrigo,* 160 Md. 595, 154 A. 136 (1931) ; *Royal Insur. Co. v. Drury,* 150 Md. 211, 132 A. 635 (1926).

We defined "waiver" in *Food Fair v. Blumberg,* 234 Md. 521, 531, 200 A. 2d 166 (1964) as:

". . . the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred

from circumstances. *Gould v. Transamerican Associates,* 224 Md. 285 [167 A. 2d 905 (1961)]. And acts relied upon as constituting a waiver of the provisions of a contract must be inconsistent with an intention to insist upon enforcing such provisions."

This definition has also been generally followed in the insurance cases, 16A Appleman, Insurance Law and Practice, § 9081 (1968).

One asserting the benefit of an estoppel must have been misled to his injury and have changed his position for the worse, having believed and relied on the representations of the party sought to be estopped, *Lusby v. First Nat'l Bank,* 263 Md. 492, 505, 283 A. 2d 570 (1971) ; *Chertkof v. Philadelphia, B. & W. R.R.,* 254 Md. 557, 570, 255 A. 2d 14 (1969) ; *Jordan v. Morgan, Adm'x,* 252 Md. 122, 131-32, 249 A. 2d 124 (1969) ; *Savonis v. Burke,* 241 Md. 316, 319, 216 A. 2d 521 (1966).

Although an insurer may be precluded from denying liability by waiver or estoppel consisting of acts, conduct or statements of an authorized officer or agent, *Assurance Corporation v. Scalco,* 158 Md. 73, 148 A. 267 (1930) ; *Royal Insur. Co. v. Drury, supra,* there is simply no evidence here which permits the application of those doctrines.

As a basis for invoking waiver and estoppel, appellant emphasizes principally the acceptance by Aiken of the rider application and premium on February 10 and the corrected application on March 31. This argument, as we have already suggested, overlooks Aiken's reminders to the insured on each of those occasions that the rider would not be effective without payment of the policy premium. As this Court said in *Burns v. Prudential Ins. Co., supra:*

"Even if the agent had sufficient authority, an ineffectual attempt to collect a past-due premium should not be held a waiver of the breach

of condition, because, as remarked by Mr. Williston, 'The facts doubtless show that the insurer or landlord is willing to accept payment at the time when demand is made and, on condition that the payment is then made, to disregard the delay up to that time, but they do not show a willingness to keep the contract in force even though the payment is not made.' " 162 Md. at 237.

Nor is there any merit in appellant's reliance upon the insurer's retention of the rider premium as a basis for invoking waiver and estoppel. It is true that where an insurance company has impliedly recognized the continuing effect of a policy by acceptance of premiums, it may be precluded from asserting a ground of forfeiture of which it had knowledge, *McFarland v. Mutual Auto Ins. Co., supra; Monahan v. Mutual Ins. Co.,* 103 Md. 145, 63 A. 211 (1906) ; *Balto. Life Ins. Co. v. Howard,* 95 Md. 244, 52 A. 397 (1902) ; and tendering such premiums back after the death of the insured is insufficient to relieve the company from being estopped, *Monahan v. Mutual Ins. Co., supra.* But this rule of law applies only when the acceptance of the premium by the insurer is unconditional. Thus, where the acceptance of the premium is *conditional,* a waiver will depend first on the fulfillment of the condition, *Crook v. N.Y. Life Ins. Co.,* 112 Md. 268, 75 A. 388 (1910). In 6 Couch on Insurance 2d, § 32:360 (1961) it is stated:

"No waiver arises from the acceptance of overdue premiums or assessments where acceptance by the insurer is not unconditional but is made conditional upon the insured's performing some act or satisfying some condition. Accordingly, there is no waiver where acceptance and retention are made subject to reinstatement . . . ."

Here, Aiken's statements to the insured on February 10 and March 31 are uncontradicted in showing that ac-

ceptance and retention of the rider premium were conditional within the meaning of the authorities cited and quoted above.

Appellant contends that when "waiver is to be inferred from facts and circumstances resting entirely on parol evidence, the question of waiver is one for the jury under instructions from the court." We do not agree that a special test for directing a verdict should apply merely because appellant relies upon parol testimony. As Judge Smith aptly stated for this Court in *Lusby v. First Nat'l Bank, supra:*

> "Where it is manifest to the court upon the plaintiff's own showing in the uncontradicted evidence in the case that there is no rational ground upon which a verdict can be based for the plaintiff, it becomes the duty of the court to direct a verdict for defendant. . . ." 263 Md. at 506.

We think that Judge Perrott, in ruling as he did, applied the correct test by resolving all conflicts in the evidence and all reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party, *Thomas v. Corso,* 265 Md. 84, 288 A. 2d 379 (1972); *Johnson & Towers v. Babbington,* 264 Md. 724, 288 A. 2d 131 (1972); *D.C. Transit System v. Brooks,* 264 Md. 578, 287 A. 2d 251 (1972); *Reiser v. Abramson,* 264 Md. 372, 286 A. 2d 91 (1972).

Measured by this standard, appellant's case produced no evidence of conduct which meets the requirements for the application of waiver or estoppel. Accordingly, the direction of the verdict was proper.

> *Judgment affirmed; appellant to pay costs.*