Dwayne MAYNARD, et al.

v.

WESTPORT INSURANCE CORP.

No. CIV.A. DKC2001–0232.

United States District Court,
D. Maryland.

July 3, 2002.

———

Stewart Andrew Sutton, Germantown, MD, for Dwayne Maynard, Bridgette Harris, Tajuana Maynard.

Paul Cottrell, Tighe Cottrell and Loagan PA, Wilmington, DE, for Westport Ins. Corp.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this third-party declaratory relief action are 1) the motion of Plaintiffs Dwayne and Tajuana Maynard for summary judgment pursuant to Fed.R.Civ.P. 56, and 2) the cross-motion of Defendant Westport Insurance Corp. ("Westport") for summary judgment. The court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For reasons that follow, the court will grant Westport's motion and deny Plaintiffs' motion.

## I. Background

Plaintiffs Dwayne and Tajuana Maynard, a married couple residing in Maryland, won a default judgment for legal malpractice against their attorney, Bridgette Harris–Smith and her law firm, Smith & Jefferson, LLC, on August 15, 2000. Plaintiffs bring this suit against Harris–Smith's malpractice insurer, Westport, seeking a declaratory judgment that Westport owed a duty to indemnify Harris–Smith for the Plaintiffs' legal malpractice claims against her and to pay the amount of a judgment entered against her in the Circuit Court for Prince George's County. In response, Westport has filed a counterclaim seeking a declaratory judgment that it is not obligated to indemnify.

In mid–1997, Plaintiffs fell behind in mortgage payments on their home in Prince George's County, Maryland and they received notice from the mortgage company's attorneys that a foreclosure was scheduled for September 30, 1997. On or about September 9, 1997, Plaintiffs met with an attorney, Bridgette Harris–Smith, and Mrs. Maynard retained Harris to file a Chapter 13 bankruptcy petition on her behalf. At this meeting, Plaintiffs paid a $1200 retainer to Harris–Smith and informed her that the foreclosure was scheduled for September 30. Harris–Smith promised to file the bankruptcy petition the next day.

Harris–Smith failed to file the petition until October 2, 1997, after the September 30 foreclosure. In a January 21, 1998, letter, the foreclosure attorney informed Harris–Smith that Mrs. Maynard's bankruptcy petition was filed three days after the foreclosure, that he was returning Plaintiffs' mortgage payment, and that he would file a motion to lift the bankruptcy stay in order to complete the ratification process. On January 23, 1998, Harris–Smith forwarded this letter to Plaintiffs, requested they contact her, and, without Plaintiff's consent or knowledge, filed a motion to dismiss Mrs. Maynard's bankruptcy petition, which the court granted on January 30, 1998. Possession of Plaintiffs' home was awarded to the mortgage company and Plaintiffs had to move out.

Mr. Maynard complained to the Office of the Bar Counsel of the District of Columbia about Harris–Smith's handling of the bankruptcy petition in an April 30, 1998, letter. In a July 10, 1998, letter, Harris–Smith responded to Plaintiffs' complaint. Subsequently, on or about February 3, 1999, Plaintiffs sued Harris–Smith and her law firm, Smith & Jefferson, LLC, for legal malpractice in the Circuit Court for Prince George's County. Smith & Jeffer-

son was served in that suit on February 25, 1999, and Harris–Smith was served on or about September 1, 1999.

Harris–Smith was insured by Westport under two successive identical "claims made and reported" policies, the first from January 13, 1998 to January 13, 1999 ("Policy One") and the second from January 13, 1999 to January 13, 2000 ("Policy Two").[1] In her application for the second policy, on January 10, 1999, Harris–Smith failed to disclose Plaintiffs' potential legal malpractice claim even though asked on the application about potential claims. Plaintiffs concede that an objectively reasonable attorney would or should have known of the potential malpractice claim at that time based on their complaint to District of Columbia Bar Counsel and would have responded affirmatively when asked whether there were potential claims. Paper no. 20, at 7; Paper no. 23, at 4.

Westport received notice of Plaintiffs' legal malpractice claim against Harris–Smith on April 6, 1999, when it received a copy of that complaint, and acknowledged receipt by letter on April 14, 1999. On May 7, 1999, Westport sent a letter to Harris–Smith stating that it would likely deny coverage based on Exclusion B of the "General Terms and Conditions" section of Policy Two and informing her that she should take all steps to prevent a default. Westport sent additional letters to Harris–Smith dated October 27, 1999, and December 13, 1999, confirming the denial of coverage. Paper no. 23, Ex. G. Exclusion B states:

This policy shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:

B. Any act, error, omission, circumstance or PERSONAL INJURY occurring prior to the effective date of this POLICY if an INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission, circumstance or PERSONAL INJURY might be the basis of a CLAIM.

Paper no. 23, Ex. D.

Neither defendant filed an answer to the legal malpractice complaint and orders of default were entered against Smith & Jefferson on May 24, 2000, and against Harris–Smith on January 13, 2000. On August 15, 2000, after a default trial before a jury pursuant to Maryland Rule 2–613(f), the jury awarded Plaintiffs $272,000 in economic and non-economic damages against Harris–Smith and Smith & Jefferson jointly and severally.[2]

Plaintiffs filed this suit for Declaratory Judgment in the Circuit Court for Prince George's County against Westport on December 14, 2000, seeking a determination of Westport's obligation to indemnify Harris–Smith for Plaintiffs' judgment against her. Westport removed the action to this court and filed 1) an answer, 2) a counterclaim for declaratory judgment that it is not liable for coverage for the underlying malpractice claim or, in the alternative, that it has the right to rescind the insurance policy, and 3) a third-party complaint against Harris–Smith and Smith & Jeffer-

---

1. Though neither party has attached Policy One as an exhibit, both parties refer to the provisions of the policies interchangeably, with the obvious exception of the effective dates of the policies, and Westport's claim that the policies were identical is undisputed. Paper no. 23, at 3; Paper no. 20 at 31. Therefore, the court will assume that the provisions of each policy are identical.

2. As noted by Westport, Plaintiffs concede that Westport was not the malpractice insurer of Smith & Jefferson, LLC. Paper no. 20, "Plaintiffs Maynards' Undisputed Facts", at 8. Accordingly, summary judgment will be granted as to Counts I and II of Westport's counterclaim as they relate to Smith & Jefferson, LLC.

son. The third party complaint was subsequently dismissed and then reinstated against Harris–Smith.[3]

Plaintiffs filed a motion for summary judgment, contending that Westport waived its right to rely on Exclusion B because it failed to rescind the policy upon Harris–Smith's misrepresentation in her January 10, 1999, insurance application. Further, Plaintiffs contend that Westport waived, or should be estopped from relying on, Exclusion B because it never asserted this exclusion in a timely and effective fashion. Additionally, Plaintiffs argue that their complaint to the D.C. Bar Counsel constituted a claim under Policy One and that, because of lack of prejudice to Westport resulting from the delayed notice, the legal malpractice claim should be covered under Policy One.

Westport filed a cross-motion for summary judgment, asserting, in contrast, that it is not liable for Plaintiffs' malpractice claims against Harris–Smith based on Exclusion B of Policy Two. In the alternative, Westport argues that, should the court find that Exclusion B does not apply, Westport should be allowed to rescind Policy Two based on Harris–Smith's material misrepresentation in her January 10, 1999, application for Policy Two. Finally, Westport contends that the malpractice claim was not covered under Policy One because Harris–Smith failed to provide notice as required by the "claims made and reported" policy.[4]

## II. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to

---

**3.** Harris–Smith (apparently now known as Bridgette Harris) recently filed an answer to the third-party complaint and a counterclaim. In addition, she joined Plaintiffs' motion for summary judgment against Westport pursuant to Fed.R.Civ.P. 10(c). Both Westport's third-party complaint and Harris–Smith's counterclaim raise issues identical to those already before the court. Accordingly, because the court will rule below that Westport does not owe a duty to indemnify Harris–Smith, Westport and Harris–Smith will be directed to show cause within ten days why the third-party complaint and counterclaim should not be dismissed.

**4.** In Count III of its counterclaim, Westport seeks a declaration of the right to rescind the insurance contract as an alternative to a declaration that Exclusion B applies to bar coverage for Plaintiffs' malpractice claim. Westport agrees to dismiss Count III voluntarily if the court rules that Exclusion B applies and is enforceable. Because, for reasons stated below, the court will rule in Westport's favor as to Exclusion B, Count III of Westport's counterclaim is dismissed.

the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

In *Celotex Corp.*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## III. Analysis

■ Plaintiffs seek a court determination that Westport owed a duty to indemnify Harris–Smith for Plaintiffs' legal malpractice judgment against her so that they may collect from Westport the amount of that judgment. They bring suit pursuant to Md.Code Ann., Ins. § 19–102(b) which states, in relevant part:

> [e]ach liability insurance policy issued in the State shall provide that:
>
> (2) if an injured person or another person claiming by, through, or under the injured person is unable, after execution on a final judgment entered in an action against an insured, to recover the full amount of the final judgment, the person may bring an action against the insured's insurer in accordance with the terms of the policy for the lesser of the amount of the judgment recovered in the action against the insured or the amount of the policy.

This statute does not authorize direct actions against a tortfeasor's insurer generally, but, "[o]nce there is a verdict or judgment in the tort action, a direct action may be maintained against the liability insurer." *Washington Metropolitan Area Transit Authority v. Queen*, 324 Md. 326, 331–332, 597 A.2d 423 (1991), *citing Allstate Ins. Co. v. Atwood*, 319 Md. 247, 257–259, 264–265, 572 A.2d 154 (1990). Therefore, in light of the judgment in their favor against Harris–Smith, Plaintiffs have standing to maintain this declaratory judgment action against Harris–Smith's insurers. *Harford Mutual Ins. Co. v. Woodfin Equities Corp.*, 344 Md. 399, 413, 687 A.2d 652 (1997). Plaintiffs' claim will be deter-

mined by whether Harris–Smith's Westport policies provided coverage.

## A. Coverage under Policy One

Plaintiffs contend that Harris–Smith's malpractice was covered under Policy One because Plaintiffs brought the D.C. Bar Counsel complaint against her on April 30, 1998, within the policy period of Policy One. While Plaintiffs admit that Westport did not receive notice of the Bar Counsel complaint until it was made aware of the malpractice lawsuit in April 1999, Plaintiffs contend that Harris–Smith's belated notice did not result in a forfeiture of coverage because Westport was not prejudiced by the delay. Westport argues, in contrast, that the actual prejudice requirement for an insurer to deny coverage based on lack of notice does not apply to "claims made and reported" policies like the one at issue here.[5]

■ Plaintiffs contend that, under Maryland law, Westport cannot deny coverage under Policy One for lack of notice unless it can show that it was prejudiced by the delay. Under Md.Code Ann., Ins. § 19–110:

> An insurer may disclaim coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer.

This statute, "measures by the standard of actual prejudice the materiality of any breach of those covenants by the insured for the purpose of determining if the breach excuses performance by the insurer." *St. Paul Fire & Marine Ins. v. House*, 315 Md. 328, 332, 554 A.2d 404 (1989). "In order to avoid its duty to defend or indemnify on the ground of delayed notice, the insurer must establish by a preponderance of affirmative evidence that the delay in giving notice has resulted in actual prejudice to the insurer." *Sherwood Brands, Inc. v. Hartford Acc. & Indemnity*, 347 Md. 32, 42, 698 A.2d 1078 (1997).

■ Section 19–110, however, only applies to true "claims made" policies. "Under Maryland law, the 'actual prejudice' requirement of § 19–110 does not apply to a 'claims made plus reporting' policy that is, a policy which requires that a claim be made against the insured, and reported to the insurer, within the effective dates of the policy." *The Rouse Co. v. Federal Insurance Co.*, 991 F.Supp. 460, 465 (D.Md.1998), *citing T.H.E. Ins. Co. v. P.T.P. Inc.*, 331 Md. 406, 416, 628 A.2d 223 (1993). Therefore, in order to determine whether Westport must demonstrate actual prejudice to deny coverage under Policy One, it is necessary to look at the language of Policy One to determine whether it is a "claims made" or a "claims made and reported" policy.

■ "It is axiomatic that an insurance contract is interpreted like any other contract." *Rouse*, 991 F.Supp. at 465, *citing Litz v. State Farm Fire & Cas. Co.*, 346

---

**5.** Westport also contends that the Complaint to the D.C. Bar Counsel was not a "claim" for the purposes of the policy. Both policies define a "CLAIM" as a demand for "LOSS," which is defined, in turn, as "the monetary and compensatory portion of any judgment, award or settlement." Paper no. 23, EX. D. The language of Plaintiffs' letter to the Bar Counsel does not appear to make any demand for "LOSS" as defined above. Paper no. 20, at E. Although Westport appears correct in its contention that the Bar Counsel complaint is not a "claim", because Plaintiffs' "claim" for coverage under Policy One fails for lack of notice, it is unnecessary to reach this contention.

Md. 217, 224, 695 A.2d 566 (1997). When the language of a contract is plain and unambiguous, there is no room for construction and the court must presume that the parties meant what they expressed. *American Casualty Co. v. Resolution Trust Corp.*, 845 F.Supp. 318, 325 (D.Md. 1993), *citing General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 492 A.2d 1306 (1985). The Insuring Agreement of Policy One states:

> The Company shall pay on behalf of any INSURED all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter …

The language of this provision clearly and unambiguously mandates that a claim must be both made and reported to come within the coverage of the policy and Plaintiffs do not propose any alternative reading of the language. Therefore, as this is a "claims made and reported" policy, Westport does not need to demonstrate actual prejudice in order to deny coverage under Policy One for lack of notice. Accordingly, Westport is not liable for the malpractice damage award under Policy One.

**B. Coverage under Policy Two**

■ Plaintiffs contend that Westport did not deny coverage in a timely or effective manner in its letters dated May 7, 1999, October 27, 1999, and December 13, 1999. As a result, they contend that Westport waived its right to deny coverage to

Harris–Smith based on her material misrepresentation because Westport continued to recognize the validity of the policy instead of rescinding it. Plaintiffs conflate the issues of whether coverage of prior acts is barred by Exclusion B and whether Westport rescinded the contract once it discovered Harris–Smith's alleged misrepresentation. Exclusion of prior acts from coverage under a contractual provision (Exclusion B) is a ground for denying coverage distinct from rescission on the basis of material misrepresentation. *See Coregis Ins. Co. v. Wheeler*, 24 F.Supp.2d 475 (E.D.Pa.1998); *Ehrgood v. Coregis Insurance Co.*, 59 F.Supp.2d 438, 447 (M.D.Pa. 1998).[6] Because, for reasons that follow, the court will find that Exclusion B does bar coverage for the malpractice, the court will not analyze whether Westport waived its right to rescind the contract based on Harris–Smith's alleged misrepresentation.

*1. Exclusion B applies*

■ "Under Maryland law, where the terms of an insurance policy are unambiguous, construction of the policy is for the court." *Reese v. New York Life Ins. Co.*, 965 F.Supp. 9, 10 (D.Md.1996), *aff'd* 113 F.3d 1232, 1997 WL 253019 (4th Cir.1997)(table). Exclusion B excludes from Policy Two's coverage:

> Any act, error, omission, circumstance or PERSONAL INJURY occurring prior to the effective date of this POLICY if an INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission, circumstance or PERSONAL INJURY might be the basis of a CLAIM.

---

**6.** Even assuming that Plaintiffs do not merely conflate the issues, their argument fails under Maryland law. Plaintiffs cannot argue that because Westport failed to rescind the policy entirely, it should be estopped from denying that coverage exists because of Exclusion B. Even were Plaintiffs to demonstrate that

Westport failed to rescind the policy, the insurer would not generally be estopped, "by its failure to deny liability, from denying the existence of coverage." *Washington Metropolitan Area Transit Auth. v. Bullock*, 68 Md. 20, 39, 509 A.2d 1217 (1986).

In their motion, with regard to whether Harris–Smith should have been on notice of her potential malpractice liability prior to the period of Policy Two, Plaintiffs state, "Plaintiffs concede that an objectively reasonable attorney knew or should have known that the Maynards had a potential legal malpractice claim based upon their April 30, 1998 letter to the Bar Counsel." Plaintiffs concede that Harris–Smith knew or should have known of her liability prior to the effective date of Policy Two. Therefore, it is undisputed that the conditions necessary for the application of Exclusion B existed and, aside from Plaintiffs' arguments below regarding waiver and estoppel, Exclusion B is applicable to Plaintiffs' legal malpractice claim.

### 2. Waiver/Estoppel

Plaintiffs contend that Westport waived, or should be estopped from asserting, the denial of coverage under Exclusion B because of its failure to inform Harris–Smith in a timely fashion that her malpractice was not covered. Plaintiffs argue that the letters were contradictory and, therefore, never informed Harris–Smith that Exclusion B applied.

Waiver is "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right." *Rubinstein v. Jefferson Nat'l Life Ins. Co.*, 268 Md. 388, 392–93, 302 A.2d 49 (1973). "An insurance company may waive provisions of its policies by express agreement, or a waiver may be inferred from the company's conduct, if the conduct is 'inconsistent with an intention to insist upon a strict performance of the condition.'" *Allstate Insurance Co. v. Reliance Insurance Co.*, 141 Md.App. 506, 514, 786 A.2d 27 (2001), *quoting St. Paul Fire & Marine Ins. Co. v. Molloy*, 291 Md. 139, 145, 433 A.2d 1135 (1981) (internal quotations omitted). Estoppel and waiver are frequently interrelated. "In order for estoppel to apply, one must have been misled and sustained injury as a result of reliance on the acts or statements of an authorized agent of the insurer." *Allstate*, 141 Md.App. at 514, 786 A.2d 27, *citing Rubinstein*, 268 Md. at 393, 302 A.2d 49.

In Maryland, "[w]hile an insurer may waive or be estopped from relying on a defense by its unreasonable delay in notifying the insured that it intends to rely on such a defense, it will not be barred where such delay is not unreasonable, or the insured was not injured." *Bullock*, 68 Md.App. at 39, 509 A.2d 1217. In a case relied on by Plaintiffs, *Griggs v. Bertram*, 88 N.J. 347, 443 A.2d 163 (1982), the court did find that an insurance company was estopped from relying on an exclusion, but only after determining that there was an unreasonable delay in disclaiming coverage.

Waiver and estoppel do not apply here because Plaintiffs' arguments that the letters did not deny coverage, or were contradictory and so misled Harris–Smith, are unfounded.[7] Plaintiffs argue that, because Westport's May 7, 2000, letter did not deny coverage, Westport waived Exclusion B. However, each of the three let-

---

7. There is a question as to whether waiver or estoppel can be determined as a matter of law or whether they constitute factual questions. Under certain circumstances, where the facts in making the determination of whether waiver or estoppel exist *vel non* are clear, waiver and estoppel can apply as a matter of law. *See Allstate*, 141 Md.App. at 515–516, 786 A.2d 27; *see also St. Paul Fire & Marine Ins. Co. v. Molloy*, 291 Md. 139, 145, 433 A.2d 1135 (1981), *citing Rubinstein*, 268 Md. at 395, 302 A.2d 49. Here, where all the facts needed to determine whether Westport waived or should be estopped are set forth in letters submitted by both parties, it is appropriate for the court to make a determination as a matter of law.

ters sent by Westport to Harris–Smith informed her expressly and in writing that Westport would rely on Exclusion B to deny coverage. On May 7, 1999, Westport informed Harris–Smith that, "[i]f it is shown that you knew or should have known of facts and circumstances which could give rise to a claim prior to the January 13, 1999 effective date of this policy, based upon Exclusion B, there would be no coverage for this claim." While the letter did not make a final decision, it gave the grounds for Westport's belief that Exclusion B applied, advised Harris–Smith that Exclusion B would apply if certain conditions applied, explained that it was in the process of carrying on an investigation into whether those conditions applied, and expressly stated that nothing in the letter constituted a waiver of any right or defense. Then, following up in both the October 27, 1999, and December 13, 1999, letters, Westport stated, consistently with the May 7 letter, that, "Because you knew of facts which could give rise to a claim prior to the January 13, 1999, effective date of this policy, based upon Exclusion B, there is coverage for this claim." Paper no. 20, Exs. M, N, O. Harris–Smith could not have been prejudiced by the delay because Westport recommended in the May 7 letter that she should respond to the then-pending lawsuit against Smith & Jefferson, LLC to avoid a default. She was not served individually until September 1, 2001, after which Westport sent her the October 27 letter confirming the denial of coverage on the grounds of prior notice. Therefore, the delay, if any, in clearly denying coverage between the May 7 and October 27 letters, was reasonable in light of the investigation and clarity of Westport's approach. Accordingly, waiver and estoppel are not appropriate in this case where Westport clearly and unambiguously denied coverage without unreasonable delay.

## IV. Conclusion

For the reasons stated above, the court will deny Plaintiffs' motion for summary judgment on its claim for declaratory judgment and grant Westport's cross-motion for summary judgment on its counterclaim for declaratory judgment. The court will declare that Westport is not obligated to indemnify Bridgette Harris–Smith for any liability resulting from the judgment entered in the Circuit Court for Prince George's County in favor of Plaintiffs and against Harris–Smith and Smith & Jefferson. In addition, Westport and Harris–Smith will be directed to show cause within ten days why Westport's third-party complaint and Harris–Smith's counterclaim should not be dismissed or those claims will be dismissed. A separate order will be entered.

## ORDER

In accordance with the accompanying Memorandum Opinion, IT IS this ___ day of July, 2002, by the United States District Court for the District of Maryland, ORDERED that:

1. Plaintiffs' motion for summary judgment under Fed.R.Civ.P. 56 BE, and the same hereby IS, DENIED;

2. Defendant's motion for summary judgment under Fed.R.Civ.P. 56 BE, and the same hereby IS, GRANTED;

3. IT IS DECLARED that Westport Insurance Company is not obligated to indemnify Bridgette Harris–Smith for any liability resulting from the judgment entered in the Circuit Court for Prince George's County in favor of Plaintiffs Dwayne and Tajuana Maynard and against Harris–Smith and Smith & Jefferson;

4. Westport and Bridgette Harris–Smith must show cause within 10 days of the date of this order why Westport's third-party complaint and Harris–Smith's

counterclaim should not be dismissed or those claims will be dismissed; and

5. The clerk transmit copies of the Memorandum Opinion and this Order to counsel for the parties.