UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

JANJER ENTERPRISES, INCORPORATED,
           *Plaintiff-Appellant,*

v.

EXECUTIVE RISK INDEMNITY,
INCORPORATED, (Chubb Group),
           *Defendant-Appellee.*

No. 03-1684

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-02-2895-PJM)

Argued: January 20, 2004

Decided: May 6, 2004

Before WILKINSON, GREGORY, and SHEDD, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Gregory wrote the opinion, in which Judge Wilkinson and Judge Shedd joined.

_____

## COUNSEL

**ARGUED:** James Michael Brault, Albert David Brault, BRAULT, GRAHAM, SCOTT & BRAULT, Rockville, Maryland, for Appellant. Jonathan Adrian Constine, HOGAN & HARTSON, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Douglas S. Crosno, HOGAN & HARTSON, L.L.P., Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

GREGORY, Circuit Judge:

Plaintiff-appellant Janjer Enterprises, Inc. ("Janjer") appeals from the judgment of the United States District Court for the District of Maryland granting summary judgment to defendant-appellee Executive Risk Indemnity, Inc. ("Executive Risk") on its claim that Executive Risk breached their contract by refusing to defend and indemnify Janjer in a sexual harassment suit brought by one of its employees. Executive Risk disclaimed coverage on the basis that Janjer failed to comply with the policy's notification of claim provision, a strict condition precedent to coverage, by not providing its vice president of claims with written notice of the suit as soon as practicable or no later than sixty days after the sexual harassment claim was first made. Janjer argued that under Maryland law, specifically Maryland Insurance Code § 19-110 ("Section 19-110"), Executive Risk was required to show prejudice before denying coverage on this basis. The district court rejected Janjer's argument, holding that Section 19-110's prejudice requirement was inapplicable because the policy in question, by making compliance with the notification of claim provision a strict condition precedent to coverage, was a "claims made plus reporting," rather than a strict "claims made," policy. For the reasons that follow, we affirm.

### I.

Janjer is a Maryland corporation whose principal place of business is in Silver Spring, Maryland. Executive Risk is a Delaware corporation with its principal place of business in Simsbury, Connecticut.

On August 19, 1998, Executive Risk issued the first of several annual "Employment Practices Liability Insurance" policies to Janjer. The policy in question, Policy No. 8166-5265 (the "Policy"), was in effect between August 19, 2000 and August 19, 2001. Under the

terms of the Policy, Executive Risk agreed to indemnify Janjer "for Defense Expenses and Loss . . . resulting from Claims first made against [Janjer] during the Policy period or, if applicable, the Extended Reporting Period, for Employment Practices Wrongful Acts occurring subsequent to the Retroactive Date stated in Item 6 of the Declaration and before the expiration of the Policy Period." J.A. 156 (emphasis omitted). In addition, Executive Risk agreed, subject to certain limitations, to "defend any covered Claim, even if the allegations thereof are groundless, false, or fraudulent." *Id.* (emphasis omitted). The Policy defined the term "Claim" to mean:

> any written notice received by [Janjer] from any current or former Employee . . . or from any person or entity acting on behalf of such a current or former Employee . . . including but not limited to the Equal Employment Opportunity Commission . . . that a current or former employee . . . intends to hold [Janjer] responsible for an Employment Practices Wrongful Act.

*Id.* at 156-57 (emphasis omitted). The term "Claim" was also defined to include "any judicial, administrative or other proceeding against [Janjer] by a current or former Employee . . . for an Employment Practices Wrongful Act." *Id.* at 157 (emphasis omitted). The term "Employment Practices Wrongful Act" was defined as "any actual or alleged: (1) Wrongful Termination; (2) Discrimination; (3) Harassment; (4) Retaliation; or (5) Workplace Tort." *Id.* at 158 (emphasis omitted).

Under the Policy, a claim was deemed to be "first made" when Janjer became aware that an employee or former employee commenced, or intended to commence, a proceeding to hold it responsible for an Employment Practices Wrongful Act. *Id.* at 166. The Policy further provided that "[a]ll Related Claims will be treated as a single Claim made at the time the first of such Related Claims was made." *Id.* (emphasis omitted). The term "Related Claims" was defined to mean "all Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions, events or Employment Practices Wrongful Acts or the same or related series of facts, circum-

stances, situations, transactions, events or Employment Practice Wrongful Acts." *Id.* at 160 (emphasis omitted).

The Policy, however, also contained a notification of claim provision, which stated that Janjer was required to provide Executive Risk with written notice of any claim first made against Janjer during the policy period "as soon as practicable and in no event later than sixty . . . days after such Claim is first made." *Id.* at 165 (emphasis omitted). Moreover, the Policy required that all written notices of claims made be sent to Executive Risk's vice president of claims. *Id.* at 155. Importantly, the Policy expressly stated that compliance with the notification of claim provision was a strict condition precedent to coverage. *Id.* ("Compliance with this notice requirement is a strict condition precedent to coverage under this Policy.").

On March 2, 2001, Janjer received a Notice of Charge of Discrimination from the Equal Employment Opportunity Commission ("EEOC"), stating that Oneyda Ventura-Cruz, an employee at a Popeye's Restaurant owned and operated by Janjer, filed a complaint alleging that she was subjected to gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Specifically, Ventura-Cruz alleged that the general manager of the Popeye's Restaurant, Bill Buckley, sexually harassed her on several occasions. She also alleged that her immediate supervisor and Janjer's human resources department failed to take appropriate corrective measures when informed of these incidents.

After investigating Ventura-Cruz's allegations, the EEOC determined, on May 30, 2001, that there was reasonable cause to believe that Ventura-Cruz was sexually harassed and subjected to a hostile work environment, and that Janjer failed to take reasonable care to prevent the sexual harassment. In issuing its determination, the EEOC provided the parties with a proposed Conciliation Agreement and invited them to participate in the conciliation process. Although both parties agreed to participate in the conciliation process, they were unable to reach a resolution after Ventura-Cruz rejected a settlement offer made by Janjer. Consequently, on August 10, 2001, the EEOC issued Ventura-Cruz a right-to-sue letter.

On October 4, 2001, Ventura-Cruz commenced an action in the Circuit Court for Prince George's County, Maryland asserting several employment practices and common law claims arising out of the misconduct alleged in her EEOC complaint. In a letter dated October 19, 2001, Janjer requested that Executive Risk indemnify and defend it in the suit commenced by Ventura-Cruz. On November 30, 2001, Executive Risk denied coverage, stating that Ventura-Cruz's suit was related to the claim she filed with the EEOC, which under the Policy was considered to be first made on March 2, 2001 when Janjer received the Notice of Charge of Discrimination from the EEOC. Because Janjer did not provide Executive Risk's vice president of claims with written notice of Ventura-Cruz's EEOC claim until October 19, 2001,[1] Executive Risk denied coverage, reasoning that Janjer failed to comply with the Policy's notification of claim provision, which was a strict condition precedent to coverage.

Upon being informed of Executive Risk's decision to disclaim coverage, Janjer filed a complaint with the Maryland Insurance Administration ("MIA") alleging that Executive Risk wrongfully denied coverage for Ventura-Cruz's suit. Janjer asserted that its noncompliance with the Policy's notification of claim provision did not provide Executive Risk with a basis to deny coverage because Executive Risk was not prejudiced by its noncompliance. On April 17, 2002, the MIA concluded that Executive Risk's denial of coverage did not violate the Maryland Insurance Code. By letter dated June 10, 2002, Janjer requested that the MIA reopen and review its complaint. In a letter dated August 19, 2002, the MIA informed Janjer that it failed to appeal the MIA's initial determination in a timely fashion and thus

---

[1]In a policy renewal application dated July 1, 2001, Janjer listed Ventura-Cruz's pending EEOC claim. J.A. 77-83. This application, however, was submitted to an insurance agent at Executive Risk. Consequently, it did not constitute proper notice of Ventura-Cruz's claim because the Policy expressly required that all written notices of claims made be submitted to Executive Risk's vice president of claims. Such a requirement is aimed at preventing "an insured from insisting that an insurer's underwriting department sift through a renewal application and decide what should be forwarded to the claims department on the insured's behalf." *Am. Cas. Co. of Reading, Pa. v. Continisio*, 17 F.3d 62, 69 (3d Cir. 1994).

declined to reopen Janjer's complaint. In doing so, however, the MIA stated that it reviewed the documentation provided by Janjer with its June 10th letter and concluded that such documentation would not have altered its determination. On September 17, 2002, Janjer appealed the MIA's August 19th determination and requested a hearing. On September 24, 2002, the MIA denied Janjer's appeal and request for a hearing, stating that such a request was untimely.

On May 24, 2002, Janjer informed Executive Risk that it reached a settlement in the Ventura-Cruz suit and demanded reimbursement for the settlement amount and attorney's fees incurred in connection with the suit. On July 24, 2002, after Executive Risk refused to adhere to its demand, Janjer commenced the present action in the Circuit Court for Montgomery County, Maryland, seeking reimbursement for $250,000 in settlement costs and over $100,000 in related legal fees. On August 30, 2002, Executive Risk removed the case to the United States District Court for the District of Maryland on the basis of diversity of citizenship. On January 6, 2003, Janjer moved for partial summary judgment, asserting that Section 19-110 requires an insurer to show prejudice before denying coverage for noncompliance with a notification of claim provision. On January 27, 2003, Executive Risk filed a cross-motion for summary judgment, arguing that the Policy expressly made compliance with the notification of claim provision a condition precedent to coverage and that the prejudice requirement of Section 19-110 did not apply to claims made policies that contained a strict reporting requirement.

After reviewing the parties cross-motions for summary judgment, the district court granted Executive Risk's motion, holding that Executive Risk did not have to show actual prejudice because the Policy, when read as a whole, was a "claims made and reporting" policy and thus exempt from Section 19-110's prejudice requirement. This appeal followed.

## II.

### A.

"We review a district court's grant of summary judgment *de novo*." *Continental Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 508

(4th Cir. 2002)). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Because we are a federal court sitting in diversity, we apply Maryland substantive law, which both parties agree governs this action, to determine whether the district court's grant of summary judgment was proper. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

B.

Section 19-110 of the Maryland Insurance Code, "Disclaimers of Coverage on Liability Policies," provides, in pertinent part, that:

> [a]n insurer may disclaim coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to . . . giv[e] the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of . . . notice has resulted in actual prejudice to the insurer.

MD. CODE ANN., INS. § 19-110. In construing and applying Section 19-110, Maryland courts have held that "claims made and reporting" policies, which require that a claim be both made against the insured and reported to the insurer during the policy period, are not subject to its prejudice requirement. *Maynard v. Westport Ins. Corp.*, 208 F. Supp. 2d 568, 574 (D. Md. 2002), *aff'd*, 55 Fed. Appx. 667 (4th Cir. 2003)(unpublished)("Under Maryland law, the 'actual prejudice' requirement of § 19-110 does not apply to a 'claims made plus reporting' policy. . . ." (quoting *Rouse Co. v. Fed. Ins. Co.*, 991 F. Supp. 460, 465 (D. Md. 1998)). Consequently, insurers of "claims made and reporting" policies need not establish by a preponderance of the evidence that they were prejudiced by the insured's failure to notify them of a claim made during the policy period prior to disclaiming coverage. On the contrary, Maryland courts have held that strict "claims made" policies, which only require that a claim be made against the insured during the policy period, are subject to Section 19-110's prejudice requirement. *Rouse Co.*, 991 F. Supp. at 465 ("If . . . the policy is a 'claims made' policy, requiring only that a claim be made against the insured during the policy period to afford coverage, § 19-110 does

apply." (citing *St. Paul Fire & Marine Ins. Co. v. House*, 554 A.2d 404 (Md. 1989)).

Under Maryland law "[i]t is axiomatic that an insurance contract is interpreted like any other contract." *Id.* Thus, Maryland courts determine whether a policy is a strict "claims made" or "claims made and reporting" policy by construing the policy as a whole rather than considering each provision in isolation. *See Sullins v. Allstate Ins. Co.*, 667 A.2d 617, 619 (Md. 1995). If the policy, when read as a whole, is clear and unambiguous, "[Maryland courts] . . . assume the parties meant what they said and will not resort to extrinsic evidence to ascertain the [policy's] meaning." *Rouse Co.*, 991 F. Supp. at 465. Applying these principles of contract construction, we find that the district court properly concluded that the Policy is a "claims made and reporting" policy and thus not subject to Section 19-110's prejudice requirement.

In the present case, the Declaration page of the Policy provides, in pertinent part, that it is "a claims made policy which applies, *subject to its terms*, only to 'claims' first made during the policy period. . . ." J.A. 154 (emphasis added). The Policy's Insuring Agreements further provide that "Executive Risk . . . and [Janjer], *subject to all of the terms, conditions and limitations of this Policy*, agree" that Executive Risk will defend and indemnify Janjer for claims first made during the policy period or, if purchased, any extended reporting period. *Id.* at 156 (emphasis added). One such condition, indeed "a strict condition precedent to coverage under [the] Policy," required that Janjer provide Executive Risk written notice of any claim first made during the policy period "as soon as practicable and in no event later than sixty . . . days after such Claim [being] first made." *Id.* at 165 (emphasis omitted). When read together, these provisions clearly make the Policy a "claims made and reporting" policy. Executive Risk agreed to defend and indemnify Janjer for claims first made during the policy period *only if* Janjer reported such claims as soon as practicable and in no event later than sixty days after they were first made.

Janjer nonetheless argues that the Policy is a strict "claims made" policy because the reporting requirement was not included in the Policy's Declaration page and Insuring Agreements. To support this argu-

ment, Janjer notes that the policy in *Maynard v. Westport Insurance Corporation*, a policy that was held to be a "claims made and reporting" policy, expressly provided in the Insuring Agreement that the insurer would indemnify the insured for "CLAIMS first made against [the] INSURED during the POLICY PERIOD and reported to the [Insurer] in writing during the POLICY PERIOD or within sixty . . . days thereafter. . . ." 208 F. Supp. 2d at 575. Janjer, however, points out a distinction that has no substantive difference. While placing a reporting requirement in a policy's declaration page or insuring agreement is one manner in which parties can create a "claims made and reporting" policy, it is not the exclusive manner. Parties may also create a "claims made and reporting" policy, as was done here, by expressly providing in a policy's declaration page or insuring agreement that coverage is subject to certain terms and conditions and setting forth those terms and conditions, including a reporting requirement as a strict condition precedent to coverage, in another part of the policy. *See, e.g., Lexington Ins. Co. v. St. Louis Univ.*, 88 F.3d 632, 634-35 (8th Cir. 1996)(holding that insurer did not have to show prejudice because the policy, although stating that it was a "claims made" policy, made compliance with notice provision a condition to coverage). An opposite conclusion would run afoul of Maryland's practice of construing insurance policies as a whole and would render meaningless an essential part of the Policy.

Thus, having determined that the Policy is a "claims made and reporting" policy, we conclude that Executive Risk properly disclaimed coverage under the Policy. The Policy expressly required that Janjer provide Executive Risk with written notice of any claim first made during the policy period as soon as practicable or, in any event, not later than sixty days after such claim being first made. Janjer failed to comply with this express condition precedent to coverage. Despite having received the EEOC's Notice of Charge of Discrimination on March 2, 2001, Janjer did not notify Executive Risk of Ventura-Cruz's claim until October 1, 2001—approximately seven months after Ventura-Cruz's claim was first made under the terms of the Policy and two months after the Policy expired.[2]

---

[2]Our conclusion that the Policy is a "claims made and reporting" policy and that Executive Risk properly disclaimed coverage on the basis

### III.

For the foregoing reasons, we affirm the district court's grant of summary judgment.

*AFFIRMED*

---

that Janjer failed to comply with the Policy's notification of claim provision is further supported by the fact that the MIA reached a similar conclusion. Under Maryland law, the MIA is charged with investigating insurance violation claims and has the authority "to order an insurer to pay a claim whenever the insurer's refusal to pay the claim violates either the insurance policy or the law." *Mut. Life Ins. Co. of NY v. Ins. Comm'r*, 723 A.2d 891, 898-99 (Md. 1999). After reviewing Janjer's claim and the terms of the Policy, the MIA concluded that Executive Risk's denial of coverage because of Janjer's noncompliance with the Policy's notification of claim provision neither violated Maryland law or the terms of the Policy.